```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CAMPINAS FOUNDATION (a/k/a CAMPINAS                         :
STIFTUNG, VADUZ),                                           :
                                                            :
                Plaintiff,              :   **MEMORANDUM and ORDER**
                                                            :
           -against-                    :   02 Civ. 3965 (BSJ)(KNF)
                                                            :
CARL SIMONI, ET AL.,                    :
                                                            :
                Defendants.             :
------------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

In this action, through which the Campinas Foundation ("Campinas") seeks to recover approximately $1.6 million dollars that it caused to be transferred by wire to defendant SSP Capital Partners Limited, the parties have, through written submissions, presented a number of discovery disputes to the Court for resolution. Those disputes are addressed below.

*Deposition of Heidrun Eckes-Chantre*

The defendants wish to examine orally Heidrun Eckes-Chantre ("Eckes-Chantre"), whom they contend is a managing agent of Campinas. In support of that contention, the defendants point to the deposition testimony given by Sabine Hoop ("Hoop"). Hoop was previously designated by the plaintiff to give testimony on its behalf pursuant to Fed. R. Civ. P. 30(b)(6). Hoop testified, among other things, that Eckes-Chantre, "calls the shots" with respect to Campinas and can give the plaintiff directives.

The plaintiff maintains that Eckes-Chantre is not its managing agent. It notes that Hoop also testified that the plaintiff foundation's council, which Hoop indicated is similar to a board of

directors, can veto Eckes-Chantre's directives and is the final arbiter respecting actions taken by Campinas.

"The law concerning who may properly be designated as a managing agent is sketchy. Largely because of the vast variety of factual circumstances to which the concept must be applied, the standard, like so many others in the law, remains a functional one to be determined largely on a case-by-case basis." Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir. 1986).

Five factors are typically considered by courts when determining whether an individual is a managing agent. Those factors are: "1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation." United States v. Afram Lines (USA), Ltd., 159 F.R.D. 408, 413 (S.D.N.Y. 1994)(internal quotation and citation omitted).

Whether a proposed deponent can be said to be a managing agent of an entity is "dependent largely on the functions, responsibilities and authority of the individual involved respecting the subject matter of the litigation." Kolb v. A.H. Bull Steamship Co., 31 F.R.D 252, 254 (E.D.N.Y. 1962). Accordingly, "[w]hether a proposed deponent falls into a particular category of employees or agents is therefore less relevant than the individual's specific functions

and authority." Afram, 159 F.R.D. at 413.  A "deponent need not have a formal association with the corporation to be deemed to be its managing agent." Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999).  Similarly, a "deponent need not be associated with the corporation at the time of his deposition." Libbey Glass, Inc., 197 F.R.D. at 351.

The Court has reviewed the entire transcript of the Hoop deposition and has considered the various factors noted above that are typically weighed when determining whether a person is a "managing agent," as that term is used in Fed. R. Civ. P. 30.  Hoop's deposition testimony indicates that Eckes-Chantre played an important role in establishing Campinas and that she is the primary beneficiary of the plaintiff foundation.  Eckes-Chantre is not employed by and, apparently, has never been employed by Campinas.  Hoop noted that Eckes-Chantre can make suggestions to Campinas and may issue directives to it; however, the final decision-maker on all matters pertinent to the operation and management of Campinas is its council, not Eckes-Chantre.  Eckes-Chantre does not exercise judgment and discretion concerning Campinas' matters. While Eckes-Chantre did authorize Hoop to give testimony in connection with the instant litigation, Hoop testified that the responsibility for continuing or ending the litigation rests with Campinas' council.

The Court is convinced, based upon its review of the entire Hoop deposition transcript and, in particular, Hoop's testimony regarding the relationship Eckes-Chantre has with the plaintiff foundation, that Eckes-Chantre would likely identify very closely with the interests of the plaintiff.  However, that factor alone does not persuade the Court that she is subject to being deposed as a managing agent of the plaintiff.  Based on the submissions made by the parties, and the Court's consideration of the five factors noted above, the Court finds that Eckes-Chantre is

not a managing agent of Campinas and cannot be examined orally by the defendants in that capacity.

*Deposition of William Laino*

The plaintiff has issued a deposition subpoena to William Laino, Esq. ("Laino"), counsel to the defendants. "Depositions of opposing counsel are disfavored." United States v. Yonkers Board of Educ., 946 F.2d 180, 185 (2d Cir. 1991)(citing Shelton v. American Motors Corp., 805 F.2d 1323, 1327 [8th Cir. 1986]). However, "the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature." In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 71 (2d Cir. 2003). The Second Circuit Court of Appeals has explained that Fed. R. Civ. P. 26 requires that, in deciding whether a deposition should be taken by one party of counsel to the opposing party to a litigation, a flexible approach should be applied by "the judicial officer supervising discovery [who must take] into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." In re Subpoena Issued to Dennis Friedman, 350 F.3d at 71-72.

The plaintiff seeks to depose Laino based upon an e-mail transmission Laino sent to defendant Karen Meyers ("Meyers") which accompanied an employment severance agreement pertinent to defendant Carl Simoni ("Simoni") and a draft stock purchase agreement through which an entity identified as Omni Enterprises, Inc. would convey shares it held in Redwood

Investment Corporation ("Redwood") to a corporation identified as Newco. It appears from the submission Campinas made to the Court that Campinas believes that a reference notation Laino made in the e-mail transmission to Meyers, to wit, "re sale of Redwood shares," was a specific reference to the transaction involving Redwood shares that is at issue in the instant litigation. According to the plaintiff, the reference notation is proof that Laino, notwithstanding his claims to the contrary, was involved in the Redwood transaction pertinent to this case, and must be examined as a fact witness and must withdraw as counsel to the defendants. However, a reading of the draft stock purchase agreement and an affidavit submitted to the Court by Laino, through which he denies any involvement in the transaction involving Redwood shares that is at issue in the case at bar, persuades the Court that Campinas is mistaken in its belief that the reference to the "sale of Redwood shares" made in the e-mail transmission was a reference to a transaction relevant to this litigation. The Court's review of the draft stock purchase agreement convinces it that the stock purchase has no connection to the Redwood shares that are germane to this action. Therefore, the Court finds that the deposition sought of Laino by the plaintiff should not be conducted because Laino had no involvement in the transaction involving the purchase of Redwood shares that is pertinent to the case at bar. In addition, Campinas' concomitant demand for Laino's withdrawal as defendants' counsel appears to be unwarranted.

*Deposition of Cindy Aloi*

Campinas seeks to depose Cindy Aloi ("Aloi"), Simoni's wife. At an earlier juncture in the pretrial discovery phase of the litigation, a dispute emerged concerning the receipt by plaintiff's counsel of a complaint filed in a matrimonial action between Simoni and Aloi. At that time, the Court indicated that either party might examine Aloi orally if she had relevant

information to provide pertaining to this action. Campinas has seized upon that statement as confirmation of the plaintiff's right to depose Aloi.

Although it was not explicitly stated by the Court previously, it should have been apparent to the parties that an examination of any deponent can be constrained by the invocation of a privilege(s). The defendants maintain that Campinas should be barred from examining Aloi at a deposition because of the adverse testimony privilege and the spousal confidential communication privilege. The adverse testimony privilege, which has no relevance to marriages that have terminated or are damaged beyond repair, "embodies society's desire to protect viable marriages from the potentially irreparable risks that may result from compelled disclosure or commentary before a tribunal." In re Witness Before the Grand Jury, 791 F.2d 234, 237 (2d Cir. 1986). The spousal confidential communication privilege "by contrast, provides assurance that all private statements between spouses . . . will be forever free from public exposure." Id. at 237 (internal quotation and citations omitted). This privilege covers only those spousal communications made in confidence during a valid marriage. Id. at 238. The burden of establishing that all of the essential elements of a privilege exist is upon the party asserting the privilege, in this case the defendants. See United States v. Hamilton, 19 F.3d 350, 354 (7th Cir. 1994).

In the case at bar, the Court is aware, as noted above, that a matrimonial action involving Aloi and Simoni was commenced. Whether theirs is a marriage which is over or has been damaged beyond repair, such that the adverse testimony privilege would not apply to them, is unclear from the submissions made to the Court. Therefore, the defendants have not established that the adverse testimony privilege is applicable and serves as a bar to a deposition of Aloi.

The plaintiff has indicated that it is desirous of learning from Aloi information about, among other things: (1) a real estate transaction concerning which she and Simoni had a conversation(s), that involves a company with which Simoni's son had a relationship; and (2) a conversation Simoni had in Aloi's presence with Alberto Lensi, who has previously been deposed in connection with the instant litigation. From the submissions made by the parties, the Court cannot conclude whether the matters Campinas wishes to explore with Aloi at a deposition are "confidential" such that the spousal confidential communication privilege would bar any enquiry into them. For example, a three-way conversation involving Aloi, Simoni and Lensi does not appear to be the type of communication that would fall under the spousal confidential communication privilege. Moreover, questions that might be put to Aloi concerning a real estate transaction(s) appear not to be of the type that federal courts have found to be confidential and protected by the privilege. See In re Witness Before the Grand Jury, 791 F.2d at 239.

The Court is aware that communications between spouses are presumed to be confidential. However, that presumption can be rebutted when the communicant is aware that the information was or might be disclosed to a third-party or to the public. Such seems to be the case with respect to the "three-way conversation" noted above. The presumption can also be rebutted when inquiries are being made into actions taken by a spouse that are not communicative in nature and may be described without divulging privileged communications. For example, spouses may be asked at a deposition whether they had a joint bank account, owned real estate jointly or granted loans to each other without waiving their confidential communication privilege. See In re Witness Before the Grand Jury, 791 F.2d at 239. In the instant case, it appears that Campinas can either rebut the spousal confidential communication privilege, at least

with respect to some of the matters it wishes to explore with Aloi, or may be able to examine Aloi without touching upon confidential marital communications at all. Based on the information the parties provided to the Court, no basis exists upon which the Court can conclude that a deposition of Aloi is barred by either of the privileges discussed above. Since the burden of establishing that the essential elements of either privilege discussed above exist rests with the defendants, and they have not met their burden, Aloi may be examined orally.

*Aloi's Tax Returns*

Aloi has also been asked to disclose to the plaintiff tax returns prepared by Aloi and Simoni.

Tax returns are confidential. See 26 U.S.C. § 6103(a). Consequently, requests for disclosure of tax returns during the pretrial discovery phase of litigation must satisfy a more stringent standard than the relevance standard that Fed. R. Civ. P. 26(b)(1) imposes upon litigants engaged in discovery exercises. A party seeking to have a court compel disclosure of tax returns must show that the tax returns are relevant to the subject matter of the action and that a compelling need for disclosure of the tax returns exists because the information contained in the tax returns is not otherwise readily available. See Cooper v. Hallgarten & Co., 34 F.R.D. 482, 484 (S.D.N.Y. 1964). The plaintiff has made no showing that the financial information it seeks to obtain through disclosure of the relevant tax returns cannot readily be obtained from another source. In the absence of such a showing, the Court will not require that Aloi disclose the sought-after tax returns.

For the reasons set forth above, Eckes-Chantre need not testify at a deposition as a managing agent of Campinas; the Laino subpoena will not be enforced by the Court; the Aloi

deposition may be conducted, although she is free to assert any privilege applicable to any particular question(s) put to her; and Aloi need not disclose tax returns to the plaintiff.

Dated: New York, New York
       April 27, 2005

SO ORDERED:

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Sent copies via facsimile
and mail to:

Jeffrey J. Wild, Esq.
Cindy Salvo, Esq.
Lowenstein Sandler, P.C.
65 Livingston Avenue
Roseland, NJ 07068-1791

Lee J. Mendelson, Esq.
William P. Laino, Esq.
Moritt Hock Hamroff
  & Horowitz LLP
400 Garden City Plaza
Garden City, NY 11530



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/28/05