DK-7791
**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P. O. Box 800
Hackensack, New Jersey  07602-0800
(201) 489-3000
(201) 489-1536 Facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    02 CIV. 3965 (BSJ) (KNF)
CAMPINAS FOUNDATION (a/k/a CAMPINAS         :
STIFTUNG, VADUZ),                                                          OBJECTION TO ORDER OF
                                                                 :         MAGISTRATE JUDGE FOX
                              Plaintiff,                                   PURSUANT TO F.R.C.P. 72(a)
                                                                 :
     v.
                                                                 :
CARL SIMONI, ET AL.,
                                                                 :
                              Defendants.
                                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Cole Schotz Meisel Forman & Leonard, P.A. ("Cole Schotz") and Michael S. Meisel, Esq. ("Meisel"), both recipients of subpoenas from Defendants, respectfully submit this objection to the Memorandum and Order of Magistrate Judge Fox entered on May 20, 2005, pursuant to Federal Rule of Civil Procedure 72(a).

## PRELIMINARY STATEMENT

Cole Schotz has represented Aviation Investors International Group, Ltd. ("AIIG") and several of its affiliates ("Aviation Investors") adverse to Defendants in several proceedings in New York and New Jersey. In 2003, Defendants issued two subpoenas to Cole Schotz and its lead counsel for Aviation Investors, Michael Meisel (the "Subpoenas"). (Copies of the

Subpoenas are annexed hereto as Ex. A.)  The Subpoenas seek communications between Cole Schotz/Meisel and (a) members of Aviation Investors' litigation control group and (b) lawyers for Aviation Investors' sole equity shareholder and Aviation Investors' director, whom defendant Carl Simoni ("Simoni") and his various companies joined as co-defendants with Aviation Investors in two New Jersey lawsuits.  This firm has worked with those lawyers in a common, coordinated legal strategy in the two New Jersey lawsuits.  The subject matter of those lawsuits, as demonstrated in detail below, substantially overlaps with the subject matter of this case.

On March 10, 2005, Defendants' counsel wrote a letter to Magistrate Judge Fox seeking to enforce the Subpoenas against this firm and Meisel.  Defendants and Cole Schotz made submissions to and participated in a conference call with Magistrate Judge Fox in connection with this issue.  Cole Schotz/Meisel argued that the Subpoenas were overbroad on their face because they clearly sought information protected by the attorney-client and common interest privileges.  (See Letters submitted by this firm to Magistrate Judge Fox, dated March 16, 2005 and May 5, 2005 and annexed hereto as Exs. B and C, respectively.)

On May 20, 2005, Magistrate Judge Fox entered a Memorandum and Order (the "Order") enforcing the Subpoenas.  (A copy of the Order is annexed hereto as Ex. D.)  The Order provides in pertinent part:

> although a common interest privilege may exist with respect to those aligned with AIIG in the New Jersey civil actions, the assertion by Meisel and Cole Schotz, that the privilege extends to conversations that they had or documents they shared with attorneys and other persons concerning the subject matter of this litigation is unavailing.  That is so because Meisel and Cole Schotz have not established, with respect to the instant case, the existence of the core elements of the privilege they seek to assert.

Id. at 3 (emphasis added).  The Order further states that the record does "not establish the existence of a common identical legal interest that is shared by the Plaintiff in the case at bar and

the AIIG aligned parties in the New Jersey civil actions that would: (a) support the invocation of the common interest privilege; and (b) warrant the Court in declining to enforce the Subpoenas." (See Ex. D at p. 3.) The Order then provides "therefore, Meisel and Cole Schotz must comply with Subpoenas that have been issued to them." Id. at 4. The last paragraph of the Order, however, recognizes that Meisel's deposition should not "be designed to elicit the strategy(ies) being pursued in the New Jersey civil actions." Id. at 4.

Despite this limitation, the Order is objectionable because it is ambiguous and contrary to controlling law. First, the Order construes the common interest privileged too narrowly, as a matter of law. The Order improperly holds that identical interests are required even where, as here, parties have agreed to and undertaken a common legal enterprise. In that same vein, the Court failed to address whether the law firm of Lowenstein Sandler was within the common interest privilege to the extent that it was acting as counsel to Aviation Investors' sole equity shareholder, Blackbird Aviation Ltd. ("Blackbird"), and Aviation Investors, director, Alberto Lensi ("Lensi).

The Order also failed to recognize the overlap between the subject matter of the instant case and the New Jersey actions in which Aviation Investors, Blackbird and Lensi are parties. Magistrate Judge Fox's failure to recognize this overlap combined with the Order's recognition that the common interest privilege may exist with respect to those aligned with Aviation Investors in the New Jersey civil actions creates an ambiguity that should be clarified by this Court. Furthermore, the Order's determination that Meisel's deposition will not be used to elicit strategies being pursued in the New Jersey action should be equally applicable to the Subpoenas' document requests.

3

Finally, the Order fails to explicitly address the Subpoenas' call for communications between Aviation Investors and its litigation control group. It should be modified to clearly exclude those communications, which are protected by the attorney-client privilege.

For the reasons set forth below and those set forth in the opposition papers previously submitted by Cole Schotz/Meisel to Magistrate Judge Fox, it is respectfully requested that this Court reverse and/or clarify the Order.

## STATEMENT OF FACTS

### The Subpoenas

The Subpoenas contain a four-part document request demand, covering January 2000 through the date of the Subpoenas. Request #1 encompasses all the issues in dispute.[1] It seeks documents concerning communications between this firm and, inter alia, (a) Jerrold Rosen, Carl Simoni, and Karen Meyers – each of whom were, at least during part of the period covered by the Subpoenas, members of Aviation Investors' litigation control group – and (b) lawyers at Lowenstein Sandler, P.C., concerning two topics.

The first topic is an arbitration initiated by one of AIIG's shareholders, AIS Ltd. (the "AIS Arbitration") in 2000 to compel liquidation of AIIG or a buyout of AIS's shares by the company. It is not clear why documents responsive to this aspect of Defendants' demand have any relevance to this proceeding (except for matters fully covered by the second topic of the request, discussed below).

---

[1] The second and third document requests in the Subpoenas overlap with the first request. The fourth and final request seeks "all documents subpoenaed by Lowenstein & Sandler, P.C. in this action." Cole Schotz previously advised defendants' counsel that we do not understand this request, since Cole Schotz/Meisel do not know what documents Lowenstein Sandler subpoenaed in this action and presume that defense counsel has received the documents.

4

Furthermore, at the time the dispute that led to the arbitration arose, and for years prior, Simoni was AIIG's president and ran the company with the assistance of Meyers and Rosen. In September 2000, shortly before AIS filed its arbitration demand, Simoni, Meyers and Rosen resigned from AIIG. Nevertheless, Simoni, assisted by Meyers and Rosen, continued to manage Aviation Investors' business through a new Simoni company, ComJet Aviation Management LLC ("ComJet"). Throughout the AIS Arbitration, Simoni, Meyers and Rosen were the persons knowledgeable about the facts relevant to the arbitration. They were AIIG's agents in virtually all its communications with Cole Schotz about the AIS Arbitration. After disputes arose between Simoni and Aviation Investors, Rosen assumed responsibility for managing Aviation Investors through his own company, KJ Aviation, and he continues to have that responsibility. He also provided Aviation Investors with outside legal counsel. Thus, defendants' demand for communications between this firm and Rosen, Simoni and Meyers about the AIS Arbitration amounts to a direct demand for this firm's communications with its client's litigation control group in that proceeding.

The second topic on which communications is sought is "the subject matter of this action." The Subpoenas define this topic to include, inter alia, any communications concerning Redwood Investment Corp. ("Redwood"), the company through which Simoni held a 25% interest in AIIG; Redwood's claim for a buyout of its interest in AIIG (which Redwood asserted as a cross-claim in the AIS Arbitration); defendant SSP Capital Partners; and payments by plaintiff Campinas Foundation to SSP in September 2000 (the "SSP Payments").

Redwood's buyout claim and the relationship of the SSP Payments to Redwood's buyout claim, however, were among the subjects involved in several proceedings in New Jersey, including one pending arbitration, in which Rosen, again, was a member of Aviation Investors'

5

litigation control group and even, for a time, provided legal services. Furthermore, in those New Jersey proceedings, Simoni and his various companies (the "Simoni Interests") sued not only Aviation Investors but also two clients of Lowenstein Sandler in those New Jersey matters, Blackbird and Lensi.[2] Blackbird was AIIG's sole equity investor, and Lensi was sole director of both AIIG and Blackbird beginning in 2000. This firm has pursued a common and coordinated legal strategy with Lowenstein Sandler in these disputes.

### Cole Schotz/Meisel's Response to the Subpoenas

Cole Schotz and Meisel served written responses to the Subpoenas on December 10, 2003, in accordance with agreements with defense counsel as to the time for response. We objected, *inter alia*, to the Subpoenas' call for documents concerning communications between this firm and (a) our client's counsel, agents and former agents, and (b) Lowenstein Sandler.

### Defendants Take No Further Action For 14 Months After Receiving This Firm's Objections

A brief exchange of letters followed this firm's December 10, 2003 responses. That exchange concluded with a December 18, 2003 letter from this firm to defendants' counsel inviting a conversation to try to work out the parties' disagreements. We did not hear from Defendants' counsel again until mid-February 2005, when we received a letter demanding that we produce responsive documents by February 22 and produce Meisel for deposition on March 3.

---

[2] In one case, the Simoni Interests counterclaimed against Aviation Investors and impleaded Blackbird. (See Answer, Counterclaim and Third Party Complaint annexed hereto as Ex. E.) In the other, Redwood sued both Aviation Investors and Blackbird for allegedly attempting to frustrate Redwood's collection of its buyout. (See Redwood Complaint annexed hereto as Ex. F.)

38570/0003-1392085v4

## LEGAL ARGUMENT

I. **THE MAGISTRATE JUDGE'S ORDER DEFINES THE COMMON INTEREST PRIVILEGE TOO NARROWLY AND THEN COMPOUNDS THAT ERROR BY FAILING TO RECOGNIZE THE OVERLAP BETWEEN THE SUBJECT MATTER OF THE INSTANT CASE AND THE NEW JERSEY ACTIONS**

Aviation Investors, Blackbird and Lensi have agreed to pursue a common legal strategy and had and continue to have an identical legal interest in defeating claims asserted by defendant Simoni and his various companies in the New Jersey actions. Accordingly, communications between Cole Schotz and Lowenstein Sandler, the law firms representing these parties, should be protected by the common interest privilege which exists between Aviation Investors, Blackbird and Lensi. Furthermore, that common interest privilege should also extend to communications relating to the instant action because the subject matter of this case and the New Jersey actions substantially overlaps.

The Order provides in pertinent part:

> although a common interest privilege may exist with respect to those aligned with AIIG in the New Jersey civil actions, the assertion by Meisel and Cole Schotz, that the privilege extends to conversations that they had or documents they shared with attorneys and other persons concerning the subject matter of this litigation is unavailing. That is so because Meisel and Cole Schotz have not established, <u>with respect to the instant case</u>, the existence of the core elements of the privilege they seek to assert.

<u>Id.</u> at 3. (emphasis added). The Order further states that the record does "not establish the existence of a common identical legal interest that is shared by the Plaintiff in the case at bar and the AIIG aligned parties in the New Jersey civil actions that would: (a) support the invocation of the common interest privilege; and (b) warrant the Court in declining to enforce the Subpoenas." (<u>See</u> Ex. D at p. 3.) The Order then provides "therefore, Meisel and Cole Schotz must comply with Subpoenas that have been issued to them." <u>Id.</u> at 4.

7

The Magistrate Judge, however, has construed the common interest privilege too narrowly. In <u>United States v. Schwimmer</u>, 892 F.2d 237 (2d Cir. 1989), the Second Circuit held that "where a joint defense effort or strategy has been decided upon and undertaken by the parties in their respective counsel" communications passing from one party to the attorney for another party will be protected under the attorney-client privilege. <u>Id.</u> at 243.  Following <u>Schwimmer</u>, courts in this district have recognized two independent situations where the common interest privilege applies:  (1) where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel ("That is [as in <u>Schwimmer</u>]where parties are represented by separate counsel that engage in a common legal enterprise"), and (2) situations where there are communications between entities that have parallel interests but are not actively pursuing a common legal strategy.  <u>See</u> <u>North River Insurance Company</u>, 1995 WL 5792 at 3; <u>Bank Brussels Lambert v. Drecit Lyonnais</u>, 160 F.R.D. at 447.  Those courts have specifically held as follows:

> [T]he weight of authority is that the common interest doctrine does extend at least two situations "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."  That is, the doctrine applies where parties are represented by separate counsel that engage in a common legal enterprise.  Under such circumstances, it is not necessary for litigation to be in progress for the common interest doctrine to apply.  Although originally developed in the context of cooperation between codefendants in criminal cases, this extension of the doctrine is fully applicable to parties in civil cases as well.
>
>  More troublesome is the question of whether the doctrine can be stretched to apply to communications between entities that have parallel interests but are not actively pursuing a common legal strategy.  In its most extreme form, this version of the common interest doctrine has been described as follows: A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice.  The third parties receiving copies of the communication and claiming a community of interest may

8

> be distinct legal entities from the client receiving the legal advice and may be a non-party to any anticipated or pending litigation. The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. The fact that there may be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest.

North River, 1995 WL 5792 at 3 (citations omitted); Bank Brussels, 160 F.RD. at 447 (citations omitted).  Thus,  North River and Bank Brussels recognize that a showing of identical "legal interests" is only necessary to establish a common interest privilege when a "common legal strategy" is not being pursued.  See North River Insurance Company, 1995 WL 5792 at 3 (citing Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1172 (D.S.C. 1975); Bank Brussels Lambert v. Drecit Lyonnais, 160 F.R.D. at 447 (citing Duplan, 397 F.Supp. at 1172.)

The Order here goes astray by holding that identical legal interests are necessary to establish a common interest privilege even where parties and their counsel have decided upon and undertaken a joint defense strategy.  (See Ex. D at p. 3.)  That determination is inconsistent with Schwimmer, North River and Bank Brussels.  Here, the common interest privilege for communications between this firm and Lowenstein Sandler concerning the subject matter of the New Jersey action is doubly applicable.  AIIG pursued a common legal strategy and had identical interests with its sole equity shareholder, Blackbird, and their common director, Lensi.  Aviation Investors, Blackbird and Lensi engaged in a coordinated strategy to defend and defeat claims asserted by the Simoni Interests in the New Jersey actions.  (See Exs. E and F.) Accordingly, any and all communications between this firm and Lowenstein Sandler relating to the subject matter of the New Jersey civil actions must be protected from disclosure by a common interest privilege.

The Order relies on Shamis v. Ambassador Factor Corp., 34 F. Supp. 2d 879 (S.D.N.Y. 1999), but that case is distinguishable.  In Shamis, the plaintiff argued that documents subpoenaed by defendant from plaintiff's bank, which were included in a privilege log provided by the bank to defendant and sent to plaintiff, were privileged under the common interest rule.  The Shamis court held that the common interest doctrine was not applicable where there was no agreement between the plaintiff and the bank; there was no evidence of a coordinated legal strategy between plaintiff and the bank, the bank was not a party to the legal action, and the bank did not contribute to plaintiff's legal expenses.  Shamis, 34 F.Supp. at 893.  Thus, Shamis addresses the second prong of the common interest privilege, in which a showing of identical legal interest is required because a common legal strategy was not being pursued.  This matter, in contrast, falls squarely within the holdings of Schwimmer, North River Insurance Company, and Bank Brussels, as the parties here engaged in a common and coordinated legal strategy.

The Order also improperly holds that a common interest privilege does not apply to communications between Cole Schotz and Lowenstein Sandler with respect to communications relating to the subject matter of the instant case.  (See Ex. D at p. 3.)  In doing so, the Order fails to recognize that the issues in the two New Jersey actions in which Aviation Investors, Blackbird and Lensi are parties involve subject matter that overlaps with the matter at bar.  Specifically, Redwood's buyout claim and the relationship of the SSP Payments to Redwood's buyout claim, which are among the topics on which communications are sought by the Subpoenas, were among the subjects involved in several proceedings in New Jersey, including one pending arbitration.  The communications between this firm and Lowenstein Sandler relating to the subject matter of the instant case are, thus, inseparable from communications relating to the New Jersey actions.  Accordingly, the common interest privilege shared by those aligned with Aviation Investors in

10

the New Jersey civil actions (as recognized may exist by Magistrate Judge Fox) should be equally applicable to any conversations they had or documents they shared concerning the subject matter of this litigation. At a minimum, the Order's indication that Meisel's deposition should not be used to elicit strategies being pursued in the New Jersey action should be equally applicable to the Subpoenas' document requests. (See Ex. D at p. 4.)

## II. THE ORDER SHOULD BE MODIFIED TO CLEARLY HOLD THAT COMMUNICATIONS BETWEEN AVIATION INVESTORS AND ITS LITIGATION CONTROL GROUP NEED NOT BE PRODUCED.

The Order's admonition that Meisel's deposition should not be used to "elicit the strategy(ies) being pursued in the New Jersey civil actions" suggests that the Magistrate Judge was concerned to exclude privileged communications from the scope of discovery (though the Magistrate Judge read the common interest privilege too narrowly). The Order fails to explicitly address, however, the question whether Aviation Investors' counsel must produce their communications with Aviation Investors' litigation control group. We respectfully request that the Order be modified to clarify that such communications are not discoverable because they are protected by the attorney-client privilege.

The privilege issues are briefed in the submissions before the Magistrate Judge, submitted herewith, to which we respectfully refer the Court. (See March 16, 2005 letter, Ex. B, at 6-8 and May 5, 2005 letter, Ex. C, at 2-4.) Those papers show that Jerrold Rosen, Esq. was within Aviation Investors' litigation control group throughout the relevant period. They also show that Carl Simoni and Karen Meyers were within Aviation Investors' litigation control group until they had a falling out with Aviation Investors at the conclusion of the AIS Arbitration hearing. Because the Order makes no explicit ruling with respect to this attorney-client privilege

11

issue, we respectfully request that the Order be modified to exclude such communications from discovery.

## **CONCLUSION**

Based on the forgoing reasons and those set forth in the opposition papers of this firm previously submitted to Magistrate Judge Fox and annexed hereto at Exhibits B and C it is respectfully requested that the Order be reversed and/or modified.

                                                COLE, SCHOTZ, MEISEL,
                                                FORMAN & LEONARD, P.A.

                                      By:    *s/ David M. Kohane*
                                                  David M. Kohane

DATED:  June 6, 2005

38570/0003-1392085v4