EXHIBIT "C"

## COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

A PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

COURT PLAZA NORTH
25 MAIN STREET
P.O. BOX 800
HACKENSACK, NEW JERSEY 07602-0800
(201) 489-3000
FAX (201) 489-1536
WWW.COLESCHOTZ.COM

TELECOMMUNICATION DEVICE FOR THE DEAF
(201) 489-3479

————

767 THIRD AVENUE
NEW YORK, NEW YORK 10017
(212) 752-0110
FAX (212) 751-9238

REPLY TO HACKENSACK OFFICE

WRITER'S DIRECT LINE
(201) 525-6267

WRITER'S DIRECT FACSIMILE
(201) 678-6267

WRITER'S EMAIL ADDRESS
dkohane@coleschotz.com

March 16, 2005

**BY HAND**

Honorable Kevin Nathaniel Fox
United States Magistrate Judge
United States Courthouse
40 Centre Street, Room 540
New York, NY 10007-1581

    Re:    Campinas Foundation v. Carl Simoni, et al.
             Docket No. 02 CV 3965

Dear Judge Fox:

    We are attorneys for Aviation Investors International Group, Ltd. ("AIIG") and several of its affiliates ("Aviation Investors"). We write in response to the March 10, 2005 letter from defendants' counsel seeking to enforce two subpoenas defendants issued in 2003 to this firm and its lead counsel for Aviation Investors, Michael Meisel (the "Subpoenas"). (A copy of the Subpoena to Mr. Meisel is attached as Exhibit A. The Subpoena to the firm is essentially identical.)

    The Subpoenas seek communications between this firm and (a) members of Aviation Investors' litigation control group or (b) lawyers for Aviation Investors' sole equity shareholder and Aviation Investors' director, whom defendant Carl Simoni and his various companies (the "Simoni Interests") joined as co-defendants with Aviation Investors in two New Jersey lawsuits. We have worked with those lawyers in a common, coordinated legal strategy in those New Jersey cases. In fact, it is evident from the face of the Subpoenas that they were fashioned as part of an extraordinary quest to discover the litigation strategies of this firm, its co-counsel and clients, and counsel for related parties.

38570/0003-2190848v1

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
COUNSELLORS AT LAW

Honorable Kevin Nathaniel Fox
March 16, 2005
Page 2

The Simoni Interests apparently hope that this Court will jump to the conclusion that the issues presented by the Subpoenas are controlled by this Court's November 18, 2004 Memorandum and Order. The Subpoenas, however, present different facts from those this Court addressed in its November 18 Opinion, and a different result should follow.

## I.   FACTUAL BACKGROUND

### A.   The Subpoenas

The Subpoenas contain a four-part document request demand, covering January 2000 through the date of the Subpoenas. Request #1 encompasses all the issues in dispute.[1] It seeks documents concerning communications between this firm and, inter alia, (a) Jerry Rosen, Carl Simoni, and Karen Meyers, and (b) lawyers at Lowenstein Sandler, P.C., concerning two topics.

The first topic is an arbitration initiated by one of AIIG's shareholders, AIS Ltd. (the "AIS Arbitration") in 2000 to compel liquidation of AIIG or a buyout of AIS's shares by the company. It is not clear why documents responsive to this aspect of defendants' demand have any relevance to this proceeding (except for matters fully covered by the second topic of the request, discussed below).

Furthermore, at the time the dispute that led to the arbitration arose, and for years prior, Simoni was AIIG's president and ran the company with the assistance of Meyers and Rosen. In September 2000, shortly before AIS filed its arbitration demand, Simoni, Meyers and Rosen resigned from AIIG. Nevertheless, Simoni, assisted by Meyers and Rosen, continued to manage Aviation Investors' business through a new Simoni company, ComJet Aviation Management LLC ("ComJet").[2] Throughout the AIS Arbitration, Simoni, Meyers and Rosen were the persons knowledgeable about the facts relevant to the arbitration. They

---

[1] The second and third document requests in the Subpoenas overlap with the first request and we do not believe they need to be separately discussed. The fourth and final request seeks "all documents subpoenaed by Lowenstein & Sandler, P.C. in this action." As we previously advised defendants' counsel, we do not understand this request, since we do not know what documents Lowenstein Sandler subpoenaed in this action and presume that defense counsel has them. We do not understand defendants to be disputing that response.

[2] Rosen left ComJet in approximately September 2001 but continued to assist in the AIS Arbitration and other Aviation Investors legal matters.

38570/0003-2190848v1

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
COUNSELLORS AT LAW

Honorable Kevin Nathaniel Fox
March 16, 2005
Page 3

were AIIG's agents in its virtually all its communications with this firm about the AIS Arbitration. After disputes arose between Simoni and Aviation Investors, Rosen assumed responsibility for managing Aviation Investors through his own company, KJ Aviation, and he continues to have that responsibility. He also provided Aviation Investors with outside legal counsel. Thus, defendants' demand for communications between this firm and Rosen, Simoni and Meyers about the AIS Arbitration amounts to a direct demand for this firm's communications with its client's litigation control group in that proceeding.

The second topic on which communications is sought is "the subject matter of this action." Although that sounds innocuous, it is vague, and the "rub," for purposes of this dispute is in the "including but not limited to..." clause. The Subpoenas define this topic to include, inter alia, any communications concerning Redwood Investment Corp. ("Redwood"), the company through which Simoni held a 25% interest in AIIG; Redwood's claim for a buyout of its interest in AIIG (which Redwood asserted as a cross-claim in the AIS Arbitration); defendant SSP Capital Partners; and payments by plaintiff Campinas Foundation to SSP in September 2000 (the "SSP Payments").

Redwood's buyout claim and the relationship of the SSP Payments to Redwood's buyout claim, however, were among the subjects involved in several proceedings in New Jersey, including one pending arbitration, on which Mr. Rosen, again, was a member of Aviation Investors' litigation control group and even, for a time, provided legal services. Furthermore, in those New Jersey proceedings, the Simoni Interests sued not only Aviation Investors but also two clients of Lowenstein Sandler in those New Jersey matters, Blackbird Aviation Ltd. ("Blackbird") and Alberto Lensi.[3] Blackbird was AIIG's sole equity investor, and Lensi was sole director of both AIIG and Blackbird beginning in 2000. This firm has pursued a common and coordinated legal strategy with Lowenstein Sandler in these disputes.

    **B.**    <u>Our Response to the Subpoenas</u>

As discussed more fully below, and contrary to defense counsel's claim that we failed to timely object to the Subpoenas, we served written responses to the Subpoenas on December 10, 2003 in accordance with agreements with defense counsel as to our time for response. (Ex. B.) We objected to the Subpoenas' apparent call for 15,000 pages of

---

[3] In one case, the Simoni Interests counterclaimed against Aviation Investors and impleaded Blackbird. In the other, Redwood sued both Aviation Investors and Blackbird for allegedly attempting to frustrate Redwood's collection of its buyout.

38570/0003-2190848v1

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
COUNSELLORS AT LAW

Honorable Kevin Nathaniel Fox
March 16, 2005
Page 4

document discovery and correspondence previously exchanged in the various proceedings with the Simoni Interests. We also noted that we had no documents responsive to several categories of the Subpoenas. Finally, we objected to the Subpoenas' call for documents concerning communications between this firm and (a) our client's counsel, agents and former agents, and (b) Lowenstein Sandler.

### C. Defendants Take No Further Action On The Subpoenas For 14 Months After Receiving Our Objections.

A brief exchange of letters followed our December 10, 2003 responses. That exchange concluded with a December 18, 2003 letter the undersigned wrote to Mr. Mendelson inviting a conversation to try to work out the parties' disagreements. (See Exs. C, D.) We did not hear from him again until mid-February 2005 (Ex. E), when we received a letter demanding that we produce responsive documents by February 22 and produce Mr. Meisel on March 3.

## II. THE SIMONI DEFENDANTS' EFFORT TO DISCOVER ADVERSE COUNSEL'S PRIVILEGED COMMUNICATIONS AND LITIGATION STRATEGY SHOULD BE REJECTED

### A. We Did Not Waive Our Objections to the Subpoenas

The Simoni Parties' lead argument for enforcing the Subpoenas is that we waited too long to serve objections under Fed. R. Civ. P. 45(c)(2)(B). Defendants simply ignore, however, that they agreed to adjourn the date for our response to the Subpoenas and that we served objections within the agreed time.

The Subpoenas are dated October 20, 2003. The Subpoena to the firm was served on or about October 28, 2003.[4] Defendants assert that objections to the Subpoenas were due on or before November 11, 2003 and that no extension of time was requested or given. (See Defense Counsel's February 23, 2005 letter to the Court.) In fact, Mr. Meisel was out of the country when the Subpoenas arrived, and we contacted defendants' counsel on November 7, 2003. Mr. Laino agreed to adjourn the response and deposition until December. We confirmed that agreement in a letter dated November 11, 2003. (Ex. F.)

---

[4] That is the date defense counsel says the subpoena was served in its February 23, 2005 letter to the Court. We do not appear to have a record of the precise service date. Mr. Meisel was never properly served, although we had not intended to make an issue of that if Simoni's counsel worked cooperatively as to dates and place of our response.

38570/0003-2190848v1

We contacted Mr. Laino again on December 1, 2003, and advised that Mr. Meisel would be available for his deposition on December 16, 2003 in Hackensack. (See Ex. G.) We spoke to Mr. Laino's partner, Lee Mendelson, on December 8, 2003, and agreed that: (1) Cole Schotz would indicate by December 10, 2003 when it anticipated turning over responsive, non-privileged documents; and (2) the parties agreed to adjourn Mr. Meisel's December 16, 2003 deposition without date. (See Ex. H.) Consistent with that agreement, Cole Schotz forwarded its response and specific objections on December 10, 2003. (Ex. B.) Defendants' argument that we waived our clients' objections to the Subpoenas by failing to object timely is simply wrong.

Even if the objections had been served late, the Court should reject the Simoni Parties' waiver argument, which, ironically, they advance after sleeping on their alleged rights for more than 14 months after receiving our objections. The case law makes clear that a failure to comply with the time limit in Rule 45 will not always be deemed a waiver. Even in DG Acquisition Corp. v. Dabah, 151 F.3d 75 (2d Cir. 1998), the one case the Simoni Interests cite on this point, the Second Circuit held that no privilege waiver had occurred even though the privilege was not asserted for a year after receipt. Id. at 81-82.

Furthermore, courts in this district have recognized that Rule 45's time limits may be relaxed. In both Grigsby & Associates, Inc. v. Rice Derivative Holdings, LP, 2001 WL 1135620 (S.D.N.Y. 2001), and Concord Boat Corporation, et al. v. Brunswick Corporation, 169 F.R.D. 44 (S.D.N.Y. 1996); for example, this Court rejected waiver arguments "where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery, (2) the subpoenaed witness is a non-party acting in good faith, and (3) counsel for witness and counsel for subpoenaing party were in contact concerning the witnesses compliance prior to the time the witness challenged legal basis for the subpoena." Id. at 49 (citations omitted). Accord, Semtek International, Inc. v. Merkuriy Ltd., 1996 WL 238538 (N.D.N.Y. 1996).

The same reasoning applies here, even apart from the Simoni Parties' agreement to adjourn the Subpoenas' return date. First, as discussed below, the Subpoenas are overbroad and exceed the bounds of fair discovery as they are clearly designed to seek privileged information and adversaries' litigation strategies. Second, this firm and Mr. Meisel are non-parties and have consistently acted in good faith. Third, we communicated with the Simoni Parties' counsel about the Subpoenas promptly after their issuance and submitted written responses, including our objections, 14 months before the Simoni Parties finally chose to seek enforcement. The Simoni Interests' waiver argument should be rejected.

### B. The AIIG Parties' Counsel's Communications With Their Agent, Manager and Former Counsel, Jerrold Rosen, Are Privileged

The Subpoenas seek disclosure of documents concerning communications between the Aviation Investors' counsel (i.e., this firm and Mr. Meisel) and Jerrold Rosen, Esq. on various litigated matters. Defendants are not entitled to those documents. In fact, as discussed below, a New Jersey court has already rejected a previous effort by Simoni to obtain this firm's communications with Mr. Rosen.

Jerry Rosen was the Aviation Investors' in-house counsel from 1997 through September 2000. He joined ComJet, with Mr. Simoni, in September 2000, but he continued to assist Mr. Simoni in running Aviation Investors. When Mr. Simoni's interests diverged and Mr. Rosen's firm, KJ Aviation replaced ComJet, Mr. Rosen continued in his role as the AIIG Parties' manager. He also provided legal services to Aviation Investors after KJ Aviation assumed management responsibilities.

Mr. Rosen was within AIIG's privilege throughout this time, both as its lawyer and as its agent. The attorney-client privilege "extends to the necessary intermediaries and agents through which the communications are made." State v. Davis, 116 N.J. 341, 361, 561 A.2d 1082 (1989) (quoting State v. Kociolek, 23 N.J. 400, 413, 129 A.2d 417 (1957)); see also Rawlings v. Police Department of Jersey City, 133 N.J. 182, 196, 627 A.2d 602 (1993). A client's privileged communications are "permanently protected from disclosure by himself or by the legal advisor, or by the agent of either confidentially used to transmit the communications." Davis, 116 N.J. at 361 (emphasis added) (quoting State v. Loponio, 85 N.J.L. 357, 360, 88A. 1045 (E&A 1913)).

Mr. Rosen was also within the privilege as Aviation Investors' former in-house counsel and employee. The Court in Al-Turki v. Fenn, 1995 WL 231278 (S.D.N.Y. 1995), recognized that the attorney-client privilege extends to former employees. Id. at 2. There, a letter sent by a company's attorneys to the former director of the company four years after the director had resigned was deemed to be protected by the attorney-client privilege. Id. The court reasoned that the attorneys continued to view the former director as a representative of the company and that they continued to look to the director to provide responses on behalf of the company. Id.; see also Upjohn Co. v. United States, 449 U.S. 383, 403, 101 S.Ct. 677 (1981) (Burger, C.J., concurring) (communication is privileged when person who speaks with attorney at direction of management regarding conduct within scope of employment is a former employee); In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig., 658 F.2d 1355, 1361 n. 7 (9th Cir. 1981), cert. denied, 455 U.S. 990 (1982) (applying Upjohn concurrence to extend privilege to former employees);

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
COUNSELLORS AT LAW

Honorable Kevin Nathaniel Fox
March 16, 2005
Page 7

B.C.F. Oil Refining, Inc. v. Consolidated Edison Co., 168 F.R.D. 161, 165-66 (S.D.N.Y. 1996) (interviews of former employees are generally covered by the work product privilege).

The Simoni Interests assert that this Court's November 18 Opinion disposes of Aviation Investors' assertion of privilege as to Mr. Rosen. The November 18 Opinion held that no common interest privilege had been established between Mr. Rosen and plaintiff Campinas. It did not address whether Mr. Rosen was within Aviation Investors' privilege or litigation control group.

Another court, however, has addressed that issue, because this is not the first time the Simoni Interests have tried to gain litigation advantage by demanding production of communications between Mr. Rosen and this firm. In one of the New Jersey case, AIIG v. Simoni, Docket No. BER-L-3719-02 (Superior Court, Bergen County, New Jersey), the Simoni Interests demanded disclosure of all communications between Aviation Investors and Mr. Rosen. After a fully litigated motion, Judge Jonathan Harris rejected that demand, squarely holding that Mr. Rosen was within the Aviation Investors "litigation control group." (Ex. I, pp. 60-61.)

That should not have been a surprise to the Simoni Interests, and certainly not to their counsel in the litigation at bar. William Laino, Esq. admitted in a June 24, 2003 letter to Jeffrey Wild that Mr. Rosen is "now an agent for and counselor to" Blackbird and Lensi, AIIG's sole director. (Ex. J.)

The Simoni Interests say the undersigned admitted at Mr. Lensi's deposition in New Jersey that discussions between Mr. Rosen and Mr. Lensi while Mr. Rosen was working for ComJet were not privileged. The transcript reveals, however, that the questioning that was permitted was carefully limited not to include litigation strategies in the various actions and did not seek communications between Mr. Rosen and this firm. (Ex. K [Lensi Tr. 361-73].) Here, the Subpoenas are specifically crafted to discover the adversary's litigation strategy. The Simoni Interests offer no justification for this attack on the adversarial process.

### C. Defendants' Demand for Communications With Simoni and Meyers Is Also Objectionable.

The Subpoenas also seek this firm's communications with Carl Simoni and Karen Meyers concerning the AIS Arbitration. (We have no responsive documents concerning communications with Simoni or Meyers concerning the "subject matter" of the instant case.) Until Simoni's falling out with AIIG, Simoni and Meyers (and Rosen) were the individuals representing the AIIG interests throughout the arbitration. They worked closely with Mr.

38570/0003-2190848v1

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
COUNSELLORS AT LAW

Honorable Kevin Nathaniel Fox
March 16, 2005
Page 8

Meisel and this firm preparing and presenting AIIG's case and were the only persons knowledgeable about AIIG's operations.

Defendants have never explained what relevance communications between this firm and Simoni/Meyers on the AIS Arbitration has to this case. Furthermore, although it might seem odd at first blush to claim privilege as to communications with an adverse party, those communications are, in fact, privileged. Simoni and Meyers are only adverse in retrospect. Throughout most of the arbitration, Simoni and Meyers were not adverse to AIIG, but were instead AIIG's agents. As such, their communications with AIIG's counsel are privileged, and that privilege belongs to AIIG, not to Simoni.

**D. This Firm's Communications With Lowenstein Sandler, Which Represented AIIG's Sole Equity Shareholder And AIIG's Co-Defendant In New Jersey, Are Protected By The Common Interest Privilege.**

The Simoni Parties also seek this firm's communications with Lowenstein Sandler and its litigation counsel, claiming that this Court has already ruled that no common interest privilege attaches to those communications. This Court's November 18 Opinion, however, does not address whether Aviation Investors had a common interest with its sole equity investor, Blackbird, and its director, Lensi, all of whom the Simoni Interests joined as co-defendants in the New Jersey actions. Lowenstein Sandler represents both Blackbird and Lensi in those cases.

In United States v. Schwimmer, 892 F.2d 237 (2d Cir. 1989), the Second Circuit held that "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel" communications passing from one party to the attorney for another party will be protected under the attorney-client privilege. Id. at 243. Following Schwimmer, courts in this district have recognized two separate situations where the common interest privilege applies: (1) where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel ("That is where parties are represented by separate counsel that engage in a common legal enterprise") and (2) situations where there are communications between entities that have identical legal interests but which are not actively pursuing a common legal strategy. See North River Insurance Company v. Columbia Casualty, 1995 WL 5792, 3 (S.D.N.Y. 1995); Bank Brussels Lambert v. Drecit Lyonnais, 160 F.R.D. 437, 447 (S.D.N.Y. 1995).

Here, the common interest privilege for communications between this firm and Lowenstein Sandler concerning the subject matter of the New Jersey actions is doubly applicable. AIIG pursued a common legal strategy and had identical interests with its sole

38570/0003-2190848v1

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
COUNSELLORS AT LAW

Honorable Kevin Nathaniel Fox
March 16, 2005
Page 9

equity shareholder, Blackbird, and their common director, Alberto Lensi. Those common interests existed throughout the AIS Arbitration and in the various post-AIS Arbitration disputes between the AIIG and Simoni Interests. Lowenstein Sandler defended Blackbird, and was co-counsel for Lensi, when the Simoni Interests made them joint defendants with AIIG in two New Jersey cases.

This Court's November 18 Opinion does not control our assertion of a common interest pertaining to these communications with Lowenstein Sandler. On the contrary, different facts and issues are presented, and a different result should follow. Upon further review of the November 18 Opinion and the facts, however, we agree to re-review our files to confirm whether any non-privileged communications exist with Lowenstein Sandler that predate that firm's involvement in the New Jersey actions.

### E. This Firm's And Mr. Meisel's Notes Are Also Protected By The Work Product Immunity

The Subpoenas call for the production of this firm's and Mr. Meisel's notes and memoranda referring to conversations or meetings with, inter alia, Jerry Rosen, Carl Simoni, Karen Meyers and lawyers at Lowenstein Sandler, P.C. concerning the AIS Arbitration and/or Redwood and the SSP Payments. The notes of this firm and Mr. Meisel constitute the inner sanctum of work-product and are not subject to disclosure.

In Hickman v. Taylor, 329 U.S. 495, 6 S.Ct. 385 (1947), the Supreme Court held that the work product doctrine protects a lawyer's need to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Id. at 510-11. The work-product doctrine protects from disclosure those documents and other tangible things that a party or a party's representative prepares in anticipation of litigation. Id. New York courts have defined such documents as those that are "uniquely the product of a lawyer's learning and professional skills." Aetna Cas. and Sur. Co. v. Certain Underwriters at Lloyd's, 263 A.D.2d 367, 692 N.Y.S.2d 384 (1st Dep't 1999)(citation omitted).

The information sought by the Simoni Interests seeks the benefit of Mr. Meisel's mental processes concerning the arbitration and lawsuits that followed in which Mr. Meisel was lead counsel to Aviation Investors.[5] They constitute core work-product and are entitled to immunity.

---

[5] It bears repeating that one of the New Jersey cases is presently in binding arbitration.

38570/0003-2190848v1

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
COUNSELLORS AT LAW

Honorable Kevin Nathaniel Fox
March 16, 2005
Page 10

Although this firm has accommodated counsel's request to depose Mr. Meisel, New York courts have recognized that the practice of forcing opposing counsel to submit to a deposition: "is discouraged," "is disruptive and lowers the standards of the legal profession," "constitute[s] an invitation to harass the attorney and parties and to disrupt and delay the case," has "a chilling effect on the truthfulness of attorney-client communications," and "is a drastic measure and is infrequently proper." Giannicos v. Bellevue Hospital Medical Center, 2005 WL 277311 (N.Y. Sup. Feb. 2005)(holding that although opposing counsel's impressions were not privileged, public policy mandated that he not be required to testify because the practice of calling opposing counsel is offensive to the Court's conception of the adversarial process)(citations omitted). Depositions of opposing counsel are generally permitted only where (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. Madanes v. Madanes, 199 F.R.D. 135, 151 (S.D.N.Y. 2001) (citation omitted). The Simoni Parties have offered nothing to meet these tests. Certainly they should not be permitted access to adverse counsel's core work product.

### III. A PRIVILEGE LOG SHOULD NOT BE REQUIRED BECAUSE THE SUBPOENAS, ON THEIR FACE, INDISCRIMINATELY SEEKS PRIVILEGED DOCUMENTS

The Simoni Parties press for a more detailed privilege log than the summary we furnished in our December 10, 2003 letter. We are aware, of course, of Local Rule 26.2. We respectfully suggest, however, that a privilege log should not be required in this unusual circumstance where the discovery demand itself, on its face, seeks obviously privileged documents.

Fed. R. Civ. P. 45(d) states that the withholding party shall describe the nature of the documents withheld in a manner "sufficient to enable the demanding party to contest the claim." Here, the Subpoenas demand production of this firm's communications with its clients' agents and with counsel for co-defendants with whom we have pursued a common litigation strategy. Indeed, it is clear that that is exactly why the Subpoenas were issued: as a tactic to discover the adversaries' litigation strategy. It cannot be the rule that a party may unilaterally put another party -- even a non-party witness -- to the expense of preparing a detailed privilege log even when the documents demanded are obviously privileged on the face of the demand.

Contrary to the suggestion in Mr. Mendelson's letter, I did not suggest that privilege logs are always "pointless make-work." I wrote, "The rules are not designed to require pointless make-work" (see Mendelson Letter Ex. A [March 9, 2005 5:58 p.m. email]). It is

Cole, Schotz, Meisel, Forman & Leonard, P.A.
COUNSELLORS AT LAW

Honorable Kevin Nathaniel Fox
March 16, 2005
Page 11

in the unique circumstances presented by the Simoni Parties' extraordinary, explicit demand for clearly privileged communications that the normally sensible requirement for a privilege log becomes "pointless make-work."

The Simoni Parties want it both ways. They purport to know enough about the withheld documents to tell this Court that the November 18 Opinion is controlling but then complain they need a privilege log. They are wrong twice. The November 18 Opinion does not control, and they do not need a privilege log, because they know they have purposely sought privileged documents in an effort to discovery their adversaries' litigation strategy. We do consent to producing a privilege log for communications with Lowenstein Sandler before that firm became involved in the New Jersey lawsuits. Otherwise, defendants' demand should be rejected.

### IV.  IF MR. MEISEL'S DEPOSITION IS TAKEN, IT SHOULD BE TAKEN AT HIS PRINCIPAL OFFICE IN HACKENSACK AS A MATTER OF CUSTOM AND PROFESSIONAL COURTESY.

The Simoni Parties complain that we "unilaterally determined" the date and location of Mr. Meisel's deposition. That is not what happened.

After the Simoni Parties issued the Subpoenas in Fall 2003 and the return date was consensually adjourned, we offered Mr. Meisel's deposition on December 16, 2003 in Hackensack. There was no objection to that venue. The December 16 date was postponed without date, and we heard nothing further from the Simoni Parties on this topic until February 14, 2005, when we received a letter suddenly demanding production of responsive documents by February 22 and that Mr. Meisel be produced on March 3.

We responded by fax on February 18. (Ex. L.) We wrote that the dates demanded were inconvenient but offered Mr. Meisel at our Hackensack offices on March 11. We reiterated that offer in Susan Usatine's February 24, 2005 letter to the Court.

We heard nothing further from the Simoni Parties until we called Mr. Mendelson on March 8 to see whether he would be proceeding with Mr. Meisel's deposition on March 11. He seemed to have forgotten that we had offered that date and said he would call back later in the day. He failed to do so. That led to the exchange of correspondence appended to Mr. Mendelson's letter in which he demanded, on March 9, to depose Mr. Meisel in New York. We responded that Mr. Meisel's schedule required him to be in New Jersey on March 11 but could be available in Hackensack that morning. The Simoni Parties opted not to come.

38570/0003-2190848v1

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
COUNSELLORS AT LAW

Honorable Kevin Nathaniel Fox
March 16, 2005
Page 12

Mr. Meisel is a non-party witness. The Simoni Parties have never explained what non-privileged, relevant information they hope to elicit from him. Common courtesy and custom dictates that he should be deposed at his principal office. We understand from prior correspondence with the Court, in fact, that defendants have produced documents in response to plaintiff's subpoenas at ComJet's offices in New Jersey, not in the Southern District of New York. If that was an acceptable venue for the Simoni Interests' production, it should suffice for Mr. Meisel too.

V.   **CONCLUSION**

The Simoni Parties' Subpoenas are directed to the law firm that represents adverse parties in pending, and recently pending, disputes. Nothing in their submission, however, justifies their effort to discover the communications of adverse parties and counsel concerning litigation strategy. Enforcement of the Subpoenas should be refused.

Respectfully yours,

David M. Kohane

cc:   Lee Mendelson, Esq.
      Jeffrey Wild, Esq.
      Jerrold B. Rosen, Esq.

38570/0003-2190848v1