EXHIBIT "H"

## COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

A PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

COURT PLAZA NORTH

25 MAIN STREET

P.O. BOX 800

HACKENSACK, NEW JERSEY 07602-0800

(201) 489-3000

FAX (201) 489-1536

WWW.COLESCHOTZ.COM

TELECOMMUNICATION DEVICE FOR THE DEAF
(201) 489-3479

---

262 THIRD AVENUE

NEW YORK, NEW YORK 10017

(212) 752-0110

FAX (212) 752-9230

REPLY TO HACKENSACK OFFICE

WRITER'S DIRECT LINE
(201) 525-6219

WRITER'S DIRECT FACSIMILE
(201) 678-6219

WRITER'S EMAIL ADDRESS
susatine@coleschotz.com

December 9, 2003

William P. Laino, Esq.
Moritt Hock Hamroff & Horowitz, LLP
Suite 202
400 Garden City Plaza
Garden City, New York 11530

    Re:    **Campinas Foundation v. Simoni et al.**
             **Index No.: 02-CV-3965**

Dear Mr. Laino:

    This letter shall simply serve to confirm my conversation with Lee Mendelson, Esq. of your office. As I indicated to Mr. Mendelson, we are unable to produce documents responsive to your subpoenas to this firm and Michael S. Meisel, Esq. by December 10, 2003. Mr. Mendelson agreed to postpone Mr. Meisel's December 16, 2003 deposition to a later date. As I indicated to Mr. Mendelson, I will advise by December 10, 2003 when we anticipate turning over responsive, non-privileged documents to your office.

    Additionally, Mr. Mendelson indicated that it makes sense for us to proceed with Moritt Hock's and Mr. Meisel's deposition on the same day. Therefore, once we have finalized our document production, we will endeavor to find a mutually acceptable date for the two depositions.

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
COUNSELLORS AT LAW

William P. Laino, Esq.
December 9, 2003
Page 2

    Lastly, we request that you forward copies of the materials you indicated were responsive to our subpoena. You estimated approximately ten inches of documents. We agree to reimburse Moritt Hock for the applicable photocopying expense. Please forward these documents at your earliest convenience. Thank you.

                            Very truly yours,

                            COLE, SCHOTZ, MEISEL,
                            FORMAN & LEONARD, P.A.


                            Susan M. Usatine

SMU:crp
cc:   Lee Mendelson, Esq.
       Adam K. Derman, Esq.
       Michael S. Meisel, Esq.

38570/0003-2133393V1

EXHIBIT "I"

```
                                    SUPERIOR COURT OF NEW JERSEY
                                    LAW DIVISION, CIVIL PART
                                    BERGEN COUNTY
                                    DOCKET NO. BER-L-3719-02
 1                                  A.D.#_____

 2   AVIATION INVESTORS              )
     INTERNATIONAL GROUP, ET AL.,    )
 3                                   )
                                     )
 4              Plaintiffs,          )
                                     )          TRANSCRIPT
 5         vs.                       )              OF
                                     )            MOTION
 6                                   )
     SIMONI, ET AL.,                 )
 7                                   )
                                     )
 8              Defendants.          )

 9
                         Place:  Bergen County Justice Center
10                               10 Main Street
                                 Hackensack, New Jersey 07601
11
                         Date:   February 20, 2004
12

13   BEFORE:

14      HONORABLE JONATHAN N. HARRIS, J.S.C.

15
     TRANSCRIPT ORDERED BY:
16
        JEFFREY J. WILD, ESQ. (Lowenstein Sandler)
17
     APPEARANCES:
18
        MICHAEL S. MEISEL, ESQ. (Cole, Schotz, Meisel, Forman &
19      Leonard)
        Attorney for Plaintiffs, Aviation Investors International
20      Group, Aviation Holding and the SPC

21
        JEFFREY J. WILD, ESQ. (Lowenstein Sandler)
22      Attorney for Third Party Defendant, Blackbird Aviation and
        Alberto Lensi
23

24

25
```

1  party aggrieved learned of the punitive conflict or the
2  punitive breach -- in this case RPC 1.9, and again, I
3  say that as an allegation, not as a finding by me that
4  there was.  I look at whether or not the moving party
5  was prejudiced in some way by being deprived of other
6  counsel during a time period that the punitive side
7  switching attorney was elsewhere.  I look at why did
8  the delay occur and then look more broadly at
9  prejudice.
10         From all the evidence in this case it is
11 apparent to me that virtually from the beginning of the
12 rift, stemming back as far as February 2002 when K-J
13 Aviation was created, and I hardly believe that this is
14 anything other than a small and dare I say it
15 incestuous business, I can't imagine that Mr. Simoni
16 and/or his company didn't know of Mr. Rosen's
17 involvement with K-J Aviation early on, but certainly
18 once this litigation got going his participation and
19 involvement through the affidavits, both against the
20 plaintiff and on behalf of the plaintiff demonstrate a
21 clear appreciation for the material involvement.  And I
22 don't begrudge and in no way criticize Mr. Derman's use
23 of discovery to try to ferret out in a little more full
24 bodied way exactly what Mr. Rosen was doing.  I don't
25 necessarily believe, however, that there was a

1  deprivation of material information that could've
2  changed the analysis from early on.  It's claimed that
3  Nov -- the November 2000 revelation, the Lensi
4  deposition that explains Rosen's status as an attorney
5  was an epiphany, well maybe that was just the straw
6  that broke the camel's back, but it hardly was new
7  news.  It was stale, it was old, it was obvious and
8  when I say it what I'm referring to what that rightly
9  or wrongly Mr. Rosen had been absorbed into the
10 litigation control group of plaintiff.  And litigation
11 control group has a definition.  RPC 1.13A says,
12 members of a litigation control group shall be deemed
13 to include current agents and employees responsible for
14 or significantly involved in the determination of the
15 organization's legal position in the matter whether or
16 not in litigation, provided however that significant
17 involvement requires involvement greater and other than
18 the supplying of factual information or data respecting
19 the matter.  The mere fact that Mr. Rosen in one of his
20 affidavits -- and this is not a stray comment,
21 referenced the need for -- excuse me, sir, if you have
22 a delivery you have to read the front door and the
23 front door says deliveries are around the corner.
24          UNIDENTIFIED SPEAKER:  Sorry.
25          THE COURT:  Not a problem, just walk around

## CERTIFICATION

67

1  I, GAIL M. TORNETTA, the assigned transcriber, do hereby
2  certify the foregoing transcript of proceedings on Tape
3  number 78-04, index number from 1563 to 7071, and Tape
4  number 79-04, index number from 0001 to 1861, is prepared
5  in full compliance with the current Transcript Format for
6  Judicial Proceedings and is a true and accurate non-
7  compressed transcript of the proceedings as recorded.

8
9
10
11  *[signature]*
12  GAIL M. TORNETTA   AOC #511
    G&L TRANSCRIPTION OF NJ          Date: February 24, 2004
13
14
15
16
17
18
19
20
21
22
23
24
25

EXHIBIT "J"



Moritt Hock Hamroff & Horowitz LLP

ATTORNEYS AT LAW

400 Garden City Plaza   Garden City, New York 11530

(516) 873-2000   Fax (516) 873-2010
website: www.mhhlaw.com

William P. Laino
Of Counsel
Email: wlaino@mhhlaw.com

June 24, 2003

Jeffrey J. Wild, Esq.
Lowenstein Sandler, PC
65 Livingston Avenue
Rosland, NJ 07068-1791

    Re:    Commercial Jet Aviation Holdings, Ltd. v.
             Carl Simoni and Com Jet MD83-49401, Inc.

    I am in receipt of your letter of June 13, 2003. I have carefully reviewed the entire transaction with my clients and we are amazed that a lawyer with your reputation and skill would dare to send such a letter. Your letter of June 13, 2003 clearly shows that you either do not understand, or choose not to understand, the terms of the deal between Com Jet MD83-49401, Inc. ("Com Jet") and your client.

    This transaction was initiated, documented and closed by Jerrold Rosen, Esq., who, I understand, is now an agent for and counselor to your clients and your law firm. A simple review of the Profit Sharing Agreement executed by Alberto Lensi on behalf of Commercial Jet Aviation Holdings, Ltd ("Commercial Jet"), which Mr. Rosen negotiated and drafted, shows that there was no agreement for Commercial Jet to share in any fees, income, or other benefit due or to become due to Com Jet other than "Net Proceeds" upon disposition of the aircraft as defined in the Secured Loan Agreement. The claim in your letter that Mr. Simoni failed to disclose to Mr. Lensi when Mr. Lensi executed the Profit Sharing Agreement that Com Jet would profit from the lease of the aircraft while it was on lease and "that there would not be any Net Proceeds at all" after it came off lease, fails for several legal and factual reasons, not the least of which is that it ascribes to Mr. Lensi a level of naiveté or ignorance of facts which is utterly incredible and it ascribes to Mr. Simoni a clairvoyance which neither he nor anyone else could possibly possess. Indeed, the aircraft remains on lease and any Net Proceeds will be determined when the aircraft is sold in the future.

    However, Mr. Lensi's penchant for rewriting history is not new. It is obvious that faced with a general worldwide economic slow down and a significant downturn in the aircraft industry in particular, Mr. Lensi and the persons or entities he represents have embarked on a strategy designed to supplement his and their income through baseless litigation by claiming that contracts and

D00001

# Moritt Hock Hamroff & Horowitz LLP

Jeffrey J. Wild, Esq.
June 24, 2003
Page -2-

transactions to which Mr. Lensi previously agreed were procured by fraud. The Com Jet Management Agreements and the SSP deal come readily to mind. Although Mr. Lensi's strategy of making wild, unsubstantiated and blatantly false claims of fraud is not new, what is surprising is that a lawyer of your caliber and a firm such as Lowenstein Sandler would accept such a claim and represent such a person.

Suffice it to say, your letter of June 13, 2003 is rejected. Neither Mr. Simoni, Com Jet nor any other entity with which Mr. Simoni is associated will be intimidated by your and your clients' threats. If Commercial Jet chooses to pursue this matter in court, so be it. However, be advised that you and your client do so at your peril and my client will seek all appropriate sanctions and remedies against your clients, your law firm, and anyone else associated with this blatant attempt, which is part of a recurring pattern, to harass and extort my clients.

Very truly yours,

WILLIAM P. LAINO

WPL:dcs

cc: Carl Simoni

D00002