EXHIBIT "A"

 

WOLFF & SAMSON PC
THE OFFICES AT CRYSTAL LAKE
ONE BOLAND DRIVE
WEST ORANGE, NEW JERSEY 07052
973-325-1500
Attorneys for Defendants
Carl Simoni and ComJet Aviation Management, LLC

| | |
|---|---|
| AVIATION INVESTORS INTERNATIONAL GROUP. LTD., a Cayman Islands Corporation, AVIATION INVESTORS HOLDINGS, LTD., a Cayman Islands Corporation, AII DC-10-30-46922, INC., a Delaware Corporation, AVIATION INVESTORS DC-10-30-981, LTD., a Cayman Islands Corporation, and AII-DC-10-30-46991, INC., a Delaware Corporation, and AVIATION INVESTORS 757-24838, LTD., a Cayman Islands Corporation, | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION:  BERGEN COUNTY<br>: DOCKET NO.: BER-L-3719-02<br>:<br>:<br>:<br>: <u>Civil Action</u><br>:<br>: |
| Plaintiffs/Counter-Claim Defendants, | : **ANSWER, COUNTERCLAIM**<br>: **AND THIRD-PARTY COMPLAINT**<br>: **OF CARL SIMONI AND COMJET**<br>: **AVIATION MANAGEMENT**<br>: |
| v. | : |
| CARL SIMONI. COMJET AVIATION MANAGEMENT, LLC., a Delaware Limited Liability Company, MAXIME SADOWSKY, and AIS, LTD., a Cayman Islands Corporation, CHARLES EDWARD KESSLER, CPA and FLEET NATIONAL BANK, a national banking association, | :<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants/Counter-claimants, | : |
| and | : |
| CARL SIMONI and COMJET AVIATION MANAGEMENT, LLC., | : |
| Third-Party Plaintiffs, | : |
| v. | : |
| AVIATION INVESTORS INTERNATIONAL, INC., a New Jersey Corporation, BLACKBIRD AVIATION, LTD., a Cayman Islands Corporation, ABERTO LENSI, and HEIDI ECKES-CHANTRE. | :<br>:<br>:<br>:<br>:<br>: |
| Third-Party Defendants. | : |

826555.03

Defendants ComJet Aviation Management, LLC ("ComJet) and Carl Simoni ("Simoni") (collectively, "Defendants") respond to the First Amended Complaint (the "Amended Complaint") as follows:

1.   Defendants deny the allegations of paragraph 1 of the Amended Complaint.

2.   Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 2 of the Amended Complaint.

3.   Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 3 of the Amended Complaint.

4.   Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 4 of the Amended Complaint.

5.   Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 5 of the Amended Complaint.

6.   Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 6 of the Amended Complaint.

7.   Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 7 of the Amended Complaint.

8.   Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 8 of the Amended Complaint.

9.   Responding to the allegations of paragraph 9 of the Amended Complaint, Defendants deny that ComJet is wholly owned by Simoni, but admit that ComJet is a Delaware limited liability company, with its principle place of business at 305 West Grand Avenue, Suite 600 Montvale, New Jersey.

10.   Defendants admit the allegations of paragraph 10 of the Amended Complaint.

11.     Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 11 of the Amended Complaint.

12.     Responding to the allegations of paragraph 12 of the Amended Complaint, Defendants admit that Simoni and Sadowsky are former directors of AIIG and that Sadowsky was terminated by AIIG in July 1999. Defendants deny the remaining allegations of paragraph 12 of the Amended Complaint, but state that Simoni advised AIIG and its subsidiaries of his intention to resign prior to September 2000.

13.     Defendants admit the allegations of paragraphs 13 of the Amended Complaint.

14.     Defendants admit the allegations of paragraphs 14 of the Amended Complaint.

15.     Defendants admit the allegations of paragraphs 15 of the Amended Complaint.

16.     Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 16 of the Amended Complaint.

17.     Responding to the allegations of paragraph 17 of the Amended Complaint, Defendants admit that AIIG was initially owned 25% by Redwood, 25% by AIS, 40% by Blackbird, and 10% by Swallow and further admit that Broska served as a director of AIIG. Defendants are without sufficient information or knowledge to admit or deny the remaining allegations of paragraph 17 of the Amended Complaint.

18.     Responding to the allegations of paragraph 18 of the Amended Complaint, Defendants admit that Kessler is an individual but are without sufficient information or knowledge to respond to the remaining allegations of paragraph 18 of the Amended Complaint.

19.     Responding to the allegations of paragraph 19 of the Amended Complaint, Defendants admit that Kessler was retained by AIIG and its related affiliates to perform

 

accounting services.   Defendants deny the remaining allegations of paragraph 19 of the Amended Complaint.

20.     Defendants admit the allegations of paragraphs 20 of the Amended Complaint.

21.     Defendants admit the allegations of paragraphs 21 of the Amended Complaint.

22.     Responding to the allegations of paragraph 22 of the Amended Complaint, Defendants admit that in or about 1992 Simoni met with Broska to discuss business opportunities in the aircraft leasing business, that AIIG was formed in 1993, but state that the ownership interests in AIH are set forth in documents creating and governing that entity, the terms of which speak for themselves.   Defendants are without sufficient information or knowledge to admit or deny the remaining allegations of paragraph 22 of the Amended Complaint.

23.     Defendants deny the allegations of paragraph 23 of the Amended Complaint.

24.     Defendants deny the allegations of paragraph 24 of the Amended Complaint.

25.     Responding to the allegations of paragraph 25 of the Amended Complaint, Defendants admit that AIIG and its subsidiaries stopped acquiring new aircraft in or about February 2000.   Defendants deny the remaining allegations in paragraph 25 of the Amended Complaint.

26.     Defendants deny the allegations of paragraph 26 of the Amended Complaint.

27.     Defendants deny the allegations of paragraph 27 of the Amended Complaint.

28.     Defendants deny the allegations of paragraph 28 of the Amended Complaint.

29.     Defendants deny the allegations of paragraph 29 of the Amended Complaint.

30.     Defendants deny the allegations of paragraph 30 of the Amended Complaint.



31.    Responding to the allegations of paragraph 31 of the Amended Complaint, Defendants admit that Simoni previously served as a director of AIIG and as an officer of AII, a subsidiary of AIIG.  Defendants deny the remaining allegations of paragraph 31 of the Amended Complaint.

32.    Defendants deny the allegations of paragraph 32 of the Amended Complaint.

33.    Defendants deny the allegations of paragraph 33 of the Amended Complaint.

34.    Defendants are without sufficient information or knowledge to admit or deny the allegations of paragraph 34 of the Amended Complaint.

35.    Responding to the allegations of paragraph 35 of the Amended Complaint, Defendants admit that AIS initiated arbitration proceedings against AIIG, Redwood, Blackbird, and Swallow.  Defendants deny the remaining allegations of paragraph 35 of the Amended Complaint.

36.    Defendants deny the allegations of paragraph 36 of the Amended Complaint.

37.    Defendants deny the allegations of paragraph 37 of the Amended Complaint.

38.    Defendants deny the allegations of paragraph 38 of the Amended Complaint.

39.    Defendants deny the allegations of paragraph 39 of the Amended Complaint.

40.    Responding to the allegations of paragraph 40 of the Amended Complaint, Defendants admit that ComJet sought to protect its rights under the ComJet management agreements and other agreements through the initiation of proceedings in the New York state court system.  Defendants deny the remaining allegations of paragraph 40 of the Amended Complaint.

41.    Defendants deny the allegations of paragraph 41 of the Amended Complaint.

42.    Defendants deny the allegations of paragraph 42 of the Amended Complaint.

43. Defendants deny the allegations of paragraph 43 of the Amended Complaint.

44. Responding to the allegations of paragraph 44 of the Amended Complaint, Defendants admit that AIIG and its related affiliated companies retained Kessler to perform accounting services. Defendants deny the remaining allegations of paragraph 44 of the Amended Complaint.

45. Responding to the allegations of paragraph 45 of the Amended Complaint, Defendants state that the terms of the Amended and Restated Buy Sell Agreement speak for themselves.

46. Responding to the allegations of paragraph 46, Defendants admit that Kessler reviewed the buyout calculation. Defendants deny the remaining allegations of paragraph 46 of the Amended Complaint.

47. Responding to the allegations of paragraph 47, Defendants admit that Kessler reviewed and confirmed the buyout calculation, but deny the remaining allegations of paragraph 47 of the Amended Complaint.

48. Defendants deny the allegations of paragraph 48 of the Amended Complaint.


**COUNT ONE**

49. Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 48 of the Amended Complaint as if fully set forth herein.

50. Responding to the allegations of paragraph 50 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

51. Defendants deny the allegations of paragraph 51 of the Amended Complaint.

826555.03                                        6

 

52.   Responding to the allegations of paragraph 52 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

53.   Responding to the allegations of paragraph 53 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

54.   Responding to the allegations of paragraph 54 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

## COUNT TWO

55.   Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 54 of the Amended Complaint as if fully set forth herein.

56.   Defendants deny the allegations of paragraph 56 of the Amended Complaint.

57   Defendants deny the allegations of paragraph 57 of the Amended Complaint.

58.   Defendants deny the allegations of paragraph 58 of the Amended Complaint.

59.   Defendants deny the allegations of paragraph 59 of the Amended Complaint.

60.   Defendants deny the allegations of paragraph 60 of the Amended Complaint.

## COUNT THREE

61.   Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 60 of the Amended Complaint as if fully set forth herein.

62.   Defendants deny the allegations of paragraph 62 of the Amended Complaint.

826555.03                                                    7

 

63. Defendants deny the allegations of paragraph 63 of the Amended Complaint.

64. Defendants deny the allegations of paragraph 64 of the Amended Complaint.

65. Defendants deny the allegations of paragraph 65 of the Amended Complaint.

66. Defendants deny the allegations of paragraph 66 of the Amended Complaint.

## COUNT FOUR

67. Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 66 of the Amended Complaint as if fully set forth herein.

68. Defendants deny the allegations of paragraph 68 of the Amended Complaint.

69. Responding to the allegations of paragraph 69 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

70. Responding to the allegations of paragraph 70 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

## COUNT FIVE

71. Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 70 of the Amended Complaint as if fully set forth herein.

72. Responding to the allegations of paragraph 72 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

 

73.   Responding to the allegations of paragraph 73 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

74.   Responding to the allegations of paragraph 74 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

## COUNT SIX

75.   Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 74 of the Amended Complaint as if fully set forth herein.

76.   Responding to the allegations of paragraph 76 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni and ComJet, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

77.   Responding to the allegations of paragraph 77 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni and ComJet, but are without sufficient information to admit or deny those allegations referring or relating to Sadowsky.

 

## COUNT SEVEN

78.    Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 77 of the Amended Complaint as if fully set forth herein.

79.    Responding to the allegations of paragraph 79, Defendants state that these allegations are not directed to them and therefore no response is required.

80.    Responding to the allegations of paragraph 80, Defendants state that these allegations are not directed to them and therefore no response is required.

81.    Responding to the allegations of paragraph 81, Defendants state that these allegations are not directed to them and therefore no response is required.

82.    Responding to the allegations of paragraph 82, Defendants state that these allegations are not directed to them and therefore no response is required.

83.    Responding to the allegations of paragraph 83, Defendants state that these allegations are not directed to them and therefore no response is required.

84.    Responding to the allegations of paragraph 84, Defendants state that these allegations are not directed to them and therefore no response is required.

## COUNT EIGHT

85.    Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 84 of the Amended Complaint as if fully set forth herein.

86.    Responding to the allegations of paragraph 86, Defendants state that these allegations are not directed to them and therefore no response is required.

87.    Responding to the allegations of paragraph 87, Defendants state that these allegations are not directed to them and therefore no response is required.



## COUNT NINE

88.   Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 88 of the Amended Complaint as if fully set forth herein.

89.   Responding to the allegations of paragraph 89 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni and ComJet, but are without sufficient information to admit or deny those allegations referring or relating to Kessler.

90.   Defendants deny the allegations of paragraph 90 of the Amended Complaint, but Defendants state that Plaintiffs have been provided with copies of documents they have requested and Defendants further state that they will continue to provide documents through the pre-trial discovery process.

91.   Responding to the allegations of paragraph 91 of the Amended Complaint, Defendants deny all of the allegations referring or relating to Simoni and ComJet, but are without sufficient information to admit or deny those allegations referring or relating to Kessler.

92.   Defendants deny the allegations of paragraph 92 of the Amended Complaint.

## COUNT TEN

93.   Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 92 of the Amended Complaint as if fully set forth herein.

94.   Responding to the allegations of paragraph 94, Defendants state that these allegations are not directed to them and therefore no response is required.

826555.03                                    11



95.   Responding to the allegations of paragraph 95, Defendants state that these allegations are not directed to them and therefore no response is required.

96.   Responding to the allegations of paragraph 96, Defendants state that these allegations are not directed to them and therefore no response is required.

97.   Responding to the allegations of paragraph 97, Defendants state that these allegations are not directed to them and therefore no response is required.

98.   Responding to the allegations of paragraph 98, Defendants state that these allegations are not directed to them and therefore no response is required.

99.   Responding to the allegations of paragraph 99, Defendants state that these allegations are not directed to them and therefore no response is required.

100.   Responding to the allegations of paragraph 100, Defendants state that these allegations are not directed to them and therefore no response is required.

101.   Responding to the allegations of paragraph 101, Defendants state that these allegations are not directed to them and therefore no response is required.

102.   Responding to the allegations of paragraph 102, Defendants state that these allegations are not directed to them and therefore no response is required.

103.   Responding to the allegations of paragraph 103, Defendants state that these allegations are not directed to them and therefore no response is required.

104.   Responding to the allegations of paragraph 104, Defendants state that these allegations are not directed to them and therefore no response is required.

105   Responding to the allegations of paragraph 105, Defendants state that these allegations are not directed to them and therefore no response is required.

 

106.    Responding to the allegations of paragraph 106, Defendants state that these allegations are not directed to them and therefore no response is required.

107.    Responding to the allegations of paragraph 107, Defendants state that these allegations are not directed to them and therefore no response is required.

## COUNT ELEVEN

108.    Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 107 of the Amended Complaint as if fully set forth herein.

109.    Responding to the allegations of paragraph 109, Defendants state that these allegations are not directed to them and therefore no response is required.

110.    Responding to the allegations of paragraph 110, Defendants state that these allegations are not directed to them and therefore no response is required.

111.    Responding to the allegations of paragraph 111, Defendants state that these allegations are not directed to them and therefore no response is required.

112.    Responding to the allegations of paragraph 112, Defendants state that these allegations are not directed to them and therefore no response is required.

## COUNT TWELVE

113.    Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 112 of the Amended Complaint as if fully set forth herein.

114.    Responding to the allegations of paragraph 114, Defendants state that these allegations are not directed to them and therefore no response is required.

 

115.   Responding to the allegations of paragraph 115, Defendants state that these allegations are not directed to them and therefore no response is required.

### COUNT THIRTEEN

116.   Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 115 of the Amended Complaint as if fully set forth herein.

117.   Defendants deny the allegations of paragraph 117 of the Amended Complaint.

118.   Defendants deny the allegations of paragraph 118 of the Amended Complaint.

### COUNT FOURTEEN

119.   Defendants repeat and reallege their answers to the allegations contained in paragraphs 1 through 118 of the Amended Complaint as if fully set forth herein.

120.   Defendants deny the allegations of paragraph 120 of the Amended Complaint.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of unclean hands, estoppel, laches, waiver, and accord and satisfaction.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are subject to an arbitration agreement and may not be resolved in this forum.



### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' damages, if any, were the result of their own negligent or wrongful conduct.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by reason of their failure to mitigate damages.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims have been adjudicated in whole or in part by a prior arbitration, since confirmed by a court of competent jurisdiction.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by an assignment to an entity that is not a party to this action.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver and release.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the conduct and claims set forth in Defendants' Counterclaim and Third Party Complaint.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' recovery against Defendants, if any, is subject to setoff.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the entire controversy doctrine.



### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are without merit because Defendants owed no duty to Plaintiffs at the time of the actions alleged in the Amended Complaint.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' lack standing to bring the claims asserted in the Amended Complaint.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by Plaintiffs' obligations to indemnify Defendants and hold Defendants harmless.

**WHEREFORE,** Defendants Carl Simoni and ComJet Aviation Management, LLC demand judgment dismissing the First Amended Complaint, and all claims therein, with prejudice, together with costs of suit, reasonable attorney's fees and any further relief that this Court may deem just and proper.

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

Defendant/Counterclaimant ComJet Aviation Management, LLC ("ComJet") and Carl Simoni ("Simoni") for their Counterclaim against Plaintiffs/Counterclaim Defendants Aviation Investors International Group, Ltd. ("AIIG"), Aviation Investors Holdings, Ltd. ("AIH"), AII DC-10-30-46922, Inc. ("SPC 46922"), Aviation Investors DC-10-30-981, Ltd. ("SPC 981"), and AII-DC-10-30-46991, Inc. ("SPC 46991") and Third Party Complaint against Third-Party Defendants Alberto Lensi ("Lensi"), Heidi Eckes-Chrantre ("Eckes"), Blackbird Aviation, Ltd. ("Blackbird"), and Aviation Investors International, Inc. ("AII") state the following:

826555.03                                              16

### Introduction

1.     This Counterclaim relates to the improper breach and repudiation by SPC 46922, SPC 981, and SPC 46991 (collectively, the "Breaching SPCs") of management agreements pursuant to which ComJet is entitled to a management fee, as well as the actions of AIH, AIIG, Eckes, and Lensi that led to the improper breach and repudiation of the ComJet management agreements.

2.     ComJet is a limited liability corporation organized under the laws of the state of Delaware, with its principal place of business located at 305 West Grand Avenue, Montvale, New Jersey.

3.     Simoni is an individual residing in the State of New York and is a citizen of that state.

4.     Upon information and belief, AIIG is a Cayman Islands corporation with its registered office c/o Charles Adams Richie & Duckworth, Zephyr House, Mary Street, Georgetown, Grand Cayman, Cayman Islands, British West Indies.

5.     Upon information and belief, AIH is a Cayman Islands corporation with its registered office c/o Maples & Calder, Ugland House, South Church Street, Georgetown, Grand Cayman, Cayman Islands, British West Indies.

6.     Upon information and belief, SPC 46922 is a Delaware corporation with its registered office c/o CSC, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. SPC 46922 is a special purpose company or "SPC" created to hold title to one commercial aircraft.

7.     Upon information and belief, SPC 981 is a Cayman Islands corporation with its registered office c/o Maples & Calder, Ugland House, South Church Street, Georgetown,

Grand Cayman, Cayman Islands, British West Indies. SPC 981 is an SPC created to hold title to one aircraft.

8.     Upon information and belief, SPC 46991 is a Delaware corporation with its registered office c/o CSC, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. SPC 46991 is an SPC created to hold title to one aircraft.

9.     AII was a corporation organized under the laws of the state of New Jersey and was in the business of providing managerial and marketing services to entities that own aircraft and lease aircraft in the aviation marketplace. At all relevant times, AII was a wholly owned subsidiary of AIIG.

10.     Upon information and belief, Eckes is an individual residing at Chalet le Ruisseau, Grubenstrasse, 3780 Gstaad, Switzerland and also residing at 30 Cape Florida Drive, Key Biscane, Florida.

11.     Upon information and belief, Lensi is an individual residing at Chalet le Ruisseau, Grubenstrasse, 3780 Gstaad, Switzerland and also residing at 30 Cape Florida Drive, Key Biscane, Florida.

12.     Upon information and belief, Blackbird is a Cayman Islands Corporation. Upon further information and belief, Eckes is the owner and controlling shareholder of Blackbird and Lensi is the officer and director of Blackbird responsible for the management of Blackbird.

13.     At all relevant times, Lensi was an officer and director of, or otherwise responsible for the management of, AIIG, AII, AIH, Blackbird, and the three Breaching SPCs. Furthermore, at all relevant times, Eckes was the controlling shareholder, directly or through companies she owned or controlled, of AIIG, AII, AIH, Blackbird and the three Breaching SPCs. Furthermore, all of the actions of AIIG, AII, AIH, Blackbird, and the three Breaching



SPCs described herein were taken at the direction of, or with the approval of, Lensi and Eckes. Therefore, Lensi and Eckes are each individually jointly and severally liable for the wrongdoing set forth herein.

### Background

14.    AIIG was formed in 1993 to locate and develop business opportunities associated with the leasing, sale, and marketing of aircraft. In furtherance of this objective, AIIG formed a wholly owned subsidiary, AIH. AIH in turn created several wholly owned special purpose companies, commonly referred to as the SPCs, three of which are the Breaching SPCs named herein.

15.    Each of the SPCs owned by AIH was created to be the entity that actually held title to each of the aircraft that AIIG and AIH sought to market. Thus, initially, each of the Breaching SPCs held title to one aircraft.

16.    AIIG and its related entities made money by leasing the aircraft at issue to end users in the aviation industry, including airlines. Thus, for each aircraft, there is a lease between the SPC and a lessor (typically an airline).

17.    Each SPC required outside financing in order to purchase its aircraft. The terms of the financing are set forth in financing agreements between each SPC and its lender.

18.    On April 30, 1998, SPC 46991, as borrower, entered into a Loan Agreement with Summit Bank (predecessor to Fleet Bank), as lender, to finance SPC 46991's acquisition of its aircraft.

826555.03                                            19

19.    On February 17, 1999, SPC 981, as borrower, entered into a Loan Agreement with Summit Bank (predecessor to Fleet Bank), as lender to finance SPC 981's acquisition of its aircraft.

20.    On December 31, 1996, SPC 46922 sold part of its ownership interest in its aircraft to a company called ICON-46922, LLC ("ICON"). In order to finance its acquisition of the aircraft, ICON entered into modifications of existing Loan Agreements between SPC 46922 and Credit Agricole Indosuez ("Credit Agricole"). (The aircraft associated with SPC 46991, SPC 981, and SPC 46922 are referred to collectively herein as "the Aircraft." Furthermore, the documents setting forth the financing arrangements for each of the Aircraft are referred to herein as the "Loan Agreements").

21.    AIIG was also the sole owner of another entity, AII. AII was in the business of providing management and marketing services for the Aircraft. Initially, each of the Breaching SPCs entered into a management agreement with AII whereby AII was to be paid a management fee in exchange for the performance of certain management services relating to the Aircraft, including oversight of the cumbersome requirements of the government regulations associated with aircraft, oversight of the bank loans each SPC used to purchase or lease its aircraft, compliance with all of the terms and provisions of the lengthy and complicated loan documents and lease agreements for each aircraft owned by the SPCs, and marketing of the Aircraft for lease or sale in the aviation marketplace.

22.    AII provided management services for each Aircraft from the inception of AIIG, AIH, and the first of the SPCs in 1993 through the fall of 2000. When ICON purchased SPC 46922's aircraft, AII continued to provide, and to be paid for, management services for ICON's aircraft.

23.   At all relevant times, the Loan Agreements for each of the Aircraft contained common or similar terms relating to the method of payment of interest and principal due under the loan or refinancing, as well as common terms for the method of payment of the management fee due to AII.

24.   Specifically, the Loan Agreements for each Aircraft financed by Fleet (or its predecessors) each provide that the lessor of the Aircraft is directed to pay its entire lease payment to the lender. The lender is then authorized, pursuant to the Loan Agreements, to first pay itself for any interest, principle or other payments due to the lender. Initially, the Loan Agreements provided that after these payments were made, the lender was required to pay AII its management fees from the excess funds.

25.   The arrangements for the Aircraft owned in part by ICON were similar. AII and ICON were parties to a management agreement that entitled AII to a management fee. When Credit Agricole received the entire lease payment from the lessor, it paid itself whatever principal, interest, or fees were due under the Loan Agreement, and then, initially, paid AII its management fee.

26.   During the fall of 2000, AII's role as the managing agent of the Aircraft ended. Specifically, SPC 46991, SPC 981, and ICON, with the consent and approval of SPC 46992, AIIG, AIH, and the relevant lenders, ended their relationship with AII and retained ComJet to perform the management services previously performed by AII.   At that time, through documents executed by Lensi, AII's right to collect management fees for the Aircraft were assigned to ComJet. ComJet entered into management agreements or otherwise established a management relationship for each of the Aircraft (referred to herein as the "ComJet management agreements"), which provided that ComJet was entitled to a management fee in



exchange for performing the work previously performed by AII. Thus, ComJet obtained all of AII's rights to collect management fees for the Aircraft.

27.    Contemporaneously with the execution of the ComJet management agreements, the Loan Agreements between the SPC 46991 and SPC 981 and their lender, Fleet (as successor to Summit Bank) were amended to provide that ComJet was to receive the management fees associated with the Aircraft. These amendments to the Loan Agreements were executed by Fleet and the relevant SPC.

28.    AIIG, AIH, Eckes and Lensi were fully aware at all relevant times of both the execution of the ComJet management agreements and the amendments to the Loan Agreements designating ComJet as the sole party entitled to the management fees. Pursuant to the amendments to the Loan Agreements between SPC 981 and SPC 46991 and Fleet, ComJet assumed all of AII's right to collect management fees.

29.    At approximately the same time SPC 46991 and SPC 981 amended their Loan Agreements with Fleet to name ComJet as the sole party entitled to management fees and the ComJet management agreements were executed, the Owner Trustee directed Credit Agricole to cease making management fee payments to AII and to remit all future management fees for ICON's aircraft to ComJet. ComJet confirmed in writing to ICON that it would perform management services for ICON's aircraft and that ComJet would be paid its management fee by Credit Agricole. Shortly thereafter, Credit Agricole began remitting the management fee for ICON's aircraft to ComJet. Each of these actions was done with the full consent and knowledge of AIIG, AIH, SPC 46922, Eckes and Lensi. In this way, ComJet assumed all of AII's rights to collect management fees for the aircraft associated with ICON.

30.   Thus, the Loan Agreements for each of the Aircraft, in their present form, require, consistent with the ComJet management agreements, that each of the lenders pay ComJet a management fee for each Aircraft. Neither the Loan Agreements nor the ComJet management agreements nor any other document authorize any of the Breaching SPCs, AIH, ICON, AIIG, Lensi, or Eckes to unilaterally direct the relevant lender to cease paying ComJet its management fees or permit the Breaching SPCs, AIIG, AIH, ICON, Lensi, Eckes, or any other entity to unilaterally terminate the ComJet management agreements.

31.   Subsequent to the end of AII's obligation to perform management services for the Aircraft, AIIG (the sole owner of AII) directed the dissolution of AII and obtained all of its assets. AIIG is the successor in interest to AII.

### The SPCs Breach and Repudiate the ComJet Management Agreements

32.   From the fall of 2000 through February 2002, ComJet provided management services for the Aircraft. During this period, with the consent and knowledge of the three Breaching SPCs, ICON, AIH, AIIG, Lensi, and Eckes, Fleet and Credit Agricole paid ComJet its management fee from the lease payments by the lessors in accordance with the terms of the relevant Loan Agreements and the relevant management agreements.

33.   On or about January 2002, without any cause or notice, and without any justification therefore, AIH and the three Breaching SPCs, through their counsel, advised Fleet and Credit Agricole that AIH and the Breaching SPCs were purportedly in the process of terminating the ComJet management agreements. AIH and the three Breaching SPCs further advised the lenders that henceforth no management fees should be directed to ComJet. This

action was conducted at the direction of, and with the prior approval of, AIIG, Lensi, and Eckes.

34.   As a result, Fleet and Credit Agricole stopped paying ComJet its management fee and have never resumed such payments.

35.   The ComJet management agreements state, at § 5, that their terms run as follows: "Unless terminated sooner by ComJet or the SPC as provided herein, the term of this Agreement shall commence upon the date hereof and shall continue until the disposition of the Aircraft." The Aircraft owned or leased by the Breaching SPCs and ICON are still owned or leased by them have not been disposed of.

36.   The ComJet management agreements state, at § 10, that the owner "may terminate this Agreement, upon thirty (30) days prior written notice to ComJet in the event that ComJet breaches this Agreement in any material respect, unless such breach is substantially cured or ComJet is diligently pursuing the cure thereof prior to the expiration of such thirty (30) day notice period."

37.   None of the Breaching SPCs have provided any such notice to ComJet and, moreover, no such breach has occurred.

38.   Neither AIH nor the Breaching SPCs had the right to instruct the SPCs' lenders to cease remitting the management fees to ComJet because AIH and the Breaching SPCs had no basis for terminating the ComJet management agreements and because such cessation of payment is in violation of the ComJet management agreements (as well as the relevant Loan Agreements).

39.   On or about January 28, 2002, without cause and without any justification therefore, counsel for the SPCs and AIH wrote a letter to Carl Simoni, the President and Chief



Executive Officer of ComJet, informing him and ComJet that AIH and the Breaching SPCs intended to terminate, among others, the management agreements between ComJet and SPC 46991, SPC 981 and SPC 46922. This action was conducted at the direction of, and with the prior approval of, AIIG, Lensi, and Eckes.

40.     Pursuant to the terms of the ComJet management agreements, neither AIH nor the Breaching SPCs has any basis for terminating, or has any right to terminate, any of the ComJet management agreements.

## COUNT I

### BREACH OF CONTRACT
### (BY COMJET AGAINST THE BREACHING SPCs, AIH, AII and AIIG)

41.     ComJet repeats and realleges paragraphs 1 through 40 of this Counterclaim and Third-Party Complaint as if fully set forth herein.

42.     The ComJet management agreements are valid contracts between the Breaching SPCs and ComJet.  Under the terms of those agreements, ComJet provides management services for the benefit of the Breaching SPCs and is entitled to receive a management fee for its services.

43.     Furthermore, all of AII's rights to collect management fees for the Aircraft were assigned to ComJet by AIH, AIIG, and the Breaching SPCs.  By preventing ComJet from receiving the management fees owed to it, AIH, AIIG, and the Breaching SPCs are in breach of their obligations pursuant to the assignment.

44.     The conduct described above constitutes a breach of the ComJet management agreements as well as a breach of AIH's agreement to assign AII's right to management fees to ComJet.

 

45.    As result of these breaches, ComJet has suffered and continues to suffer damages.

## COUNT II

### TORTIOUS INTERFERENCE
### (BY COMJET AGAINST AIH, AIIG, LENSI, AND ECKES)

46.    ComJet repeats and realleges paragraphs 1 through 45 of this Counterclaim and Third-Party Complaint as if fully set forth herein.

47.    At all relevant times herein, AIH, AIIG, Lensi and Eckes were aware of the existence of the ComJet management agreements between ComJet and the Breaching SPCs.

48.    At all relevant times herein, AIH, AIIG, Lensi, and Eckes were aware that the Loan Agreements between the Breaching SPCs, as well as ICON, and their lenders provided that ComJet was entitled to be paid a management fee by the lenders from the proceeds of the lease payments by the lessors of the relevant aircraft.

49.    AIH, AIIG, Lensi, and Eckes tortiously interfered with both the ComJet management agreements and the provisions of the Loan Agreements between the SPCs and their lenders that provided for the payment of management fees to ComJet.

50.    AIG, AIIG, Lensi and Eckes have performed these acts intentionally, and with malice and knowledge that such conduct would damage ComJet and cause its rights to be violated.  This improper conduct is wholly transgressive of generally accepted standards of commercial morality and law.

51.    As a result of the conduct alleged herein, ComJet has suffered and continues to suffer damages.

## COUNT III

### DECLARATORY JUDGMENT
### (BY COMJET AGAINST THE BREACHING SPCs, AIH AND AIIG)

52.     ComJet repeats and realleges paragraphs 1 through 51 of this Counterclaim and Third-Party Complaint as if fully set forth herein.

53.     The ComJet management agreements are valid contracts between ComJet and the Breaching SPCs.  There presently exists no basis for the Breaching SPCs to repudiate or otherwise refuse to perform their obligations under the ComJet management agreements.

54.     The Loan Agreements between the SPCs and their lenders provide that ComJet is to be paid its management fee from the proceeds of the lease payments by the lessees of the aircraft owned or leased by the SPCs.  This provision has not been amended and remains in full force and effect.

55.     As a result of the foregoing, ComJet is entitled to a judgment declaring that it is entitled to the management fees wrongfully withheld from it and an order requiring that the management fees be paid to ComJet.

## COUNT IV

### INDEMNIFICATION
### (BY COMJET AGAINST THE COUNTERLCIAM DEFENDANTS)

56.     ComJet repeats and realleges paragraphs 1 through 55 of this Counterclaim and Third-Party Complaint as if fully set forth herein.

57.     Pursuant to the terms and conditions of the ComJet management agreements, the Loan Agreements between the Breaching SPCs and their lenders, as amended, other documents, and the practices of the parties, AIIG, AIH, AII, and the three Breaching SPCs

 

(collectively, the "Counterclaim Defendants") agreed to indemnify ComJet for all fees incurred by ComJet as a result of any breach by the Counterclaim Defendants of the ComJet management agreements and Loan Agreements between the SPCs and their lenders.

58.   The Counterclaim Defendants have breached the ComJet management agreements and the Loan Agreements.  Despite a request to do so, the Counterclaim Defendants have failed and refused to rescind their letters to the SPCs' lenders directing cessation of payment of management fees to ComJet.

59.   As a result of the foregoing, ComJet has been forced to bring this action and defend the Counterclaim Defendants' claims against ComJet and has incurred significant and ongoing fees and costs.

60.   ComJet is entitled to indemnification for these fees and costs by the Counterclaim Defendants in an amount to be determined by the Court.

## COUNT V

### INDEMNIFICATION
### (BY SIMONI AGAINST AIIG, AIH, AND BLACKBIRD)

61.   Simoni repeats and realleges paragraphs 1 through 60 of this Counterclaim and Third-Party Complaint as if fully set forth herein.

62.   Beginning in 1993, Simoni served as the Manager of AII.  His relationship with AII was governed by an Employment Agreement ("Employment Agreement") between AII and Simoni entered into on or about March 4, 1993.

63.   On or about September 14, 2000, AII and Simoni entered into a Severance and Modification Agreement ("Severance Agreement").  By its terms, the Severance Agreement modified the Employment Agreement and added new obligations for Simoni and AII.

64. The Severance Agreement states that "no cause exists for the termination of Simoni as Manager" of AII. The Severance Agreement further provides:

> AII shall indemnify and hold Simoni harmless from and against all claims, fees, taxes, damages, penalties, expenses, or liabilities, including but not limited to reasonable attorneys fees, asserted against him by any person, party or entity and which relates to any business or activities of AII or any of its affiliated companies or parent company or any officers or directors thereof.

65. Upon information and belief, some time after the execution of the Severance Agreement, AIIG caused AII to be dissolved. Upon further information and belief, AIIG obtained all of the assets of AII upon its dissolution and became the primary obligor for all of AII's debts and contractual obligations. Upon further information and belief, AIIG is the successor in interest to AII. Therefore, all of AII's obligations under the Employment Agreement and the Severance Agreement are now obligations owed by AIIG.

66. The Severance Agreement further provides that Blackbird will guaranty the obligations of AII, including the obligation to indemnify and hold harmless Simoni.

67. On or about April 30, 2002, AIIG, AIH, the Breaching SPCs, and a fourth SPC wholly owned by AIH (collectively, "Plaintiffs") filed and subsequently served a Complaint against Simoni in the Superior Court of New Jersey, Bergen County, Law Division (referred to herein as the Superior Court Action). Plaintiffs filed and served a First Amended Complaint on or about November 4, 2002.

68. In their complaint, Plaintiffs make several claims against Simoni referring and relating to the performance of his role as Manager of AII. As such, under the terms of the Employment Agreement and the Severance Agreement, Simoni is entitled to be indemnified and held harmless against all of these claims by AII, and its successor AIIG.



69. Despite Simoni's demands to be indemnified and to held harmless, AII and AIIG have refused to indemnify or hold Simoni harmless.

70. Because of the refusal of AII and AIIG to indemnify and hold harmless Simoni, Blackbird must indemnify and hold Simoni harmless.

WHEREFORE Counterclaimant ComJet Aviation Management, LLC and Third Party Plaintiff/Counterclaimaint Carl Simoni demand judgment as follows:

A. Awarding ComJet Aviation Management, LLC compensatory damages in an amount to be determined at the trial of this matter;

B. Declaring that ComJet Aviation Management, LLC is entitled to all management fees withheld from it by the Counterclaim Defendants Aviation Investors International Group, Ltd., Aviation Investors Holdings, Ltd., AII DC-10-30-46922, Inc., Aviation Investors DC-10-30-981, Ltd., and AII-DC-10-30-46991, Inc. and an order directing that all management fees previously withheld from ComJet be paid to ComJet Aviation Management, LLC.

C. Ordering Counterclaim Defendants Aviation Investors International Group, Ltd., Aviation Investors Holdings, Ltd., AII DC-10-30-46922, Inc., Aviation Investors DC-10-30-981, Ltd., and AII-DC-10-30-46991, Inc. to indemnify ComJet Aviation Management, LLC for all costs and fees incurred in defending and prosecuting its right to the disputed management fees.

D. Ordering Third-Party Defendants Aviation Investors International, Inc. and Blackbird Aviation, Ltd. and Counterclaim Defendant Aviation Investors International Group, Ltd., to indemnify and otherwise hold harmless Defendant/Counterclaimant/Third-Party Plaintiff Carl Simoni in an amount to be determined at the trial of this matter.

E. For attorneys fees and costs of suit and such and other relief as this Court may deem just and proper.

WOLFF & SAMSON PC
Attorneys for Defendants
Carl Simoni and
ComJet Aviation Management, LLC

By: _____
ADAM K. DERMAN

Dated: April 4, 2003

826555.03

30

## DESIGNATION OF TRIAL COUNSEL

Please take notice that pursuant to Rule 4:25-4, Adam K. Derman, Esq., is hereby designated as trial counsel in the within matter.

WOLFF & SAMSON PC
Attorneys for Defendants
Carl Simoni and
ComJet Aviation Management, LLC

By: _____
ADAM K. DERMAN

Dated: April 4, 2003

## JURY TRIAL DEMAND

Defendant Carl Simoni and Defendant/Counterclaimant ComJet Aviation Management, LLC demand a jury for all matters herein.

WOLFF & SAMSON PC
Attorneys for Defendants
Carl Simoni and
ComJet Aviation Management, LLC

By: _____
ADAM K. DERMAN

Dated: April 4, 2003

826555.03

31

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to Rule 4:5-1, I certify the matter in controversy is currently the subject of several other proceedings previously filed in other jurisdictions, including the following:   an action filed in New York State Supreme Court captioned ComJet Aviation Management, LLC v. Aviation Investors Holdings Ltd., et al., Index No. 02-600529; an arbitration proceeding captioned AIS Ltd. v. Aviation Investors International Group, Ltd., et al., Case No. 50 T 181 00399 00; a confirmation proceeding filed in New York Supreme Court captioned AIS Ltd. v. Aviation Investors International Group, Ltd., et al., Index No. 109284/02; and an action filed in the Southern District of New York captioned Campinas Stifung v. Simoni, et al., Index No. 02 CV 3965.  To the best of my knowledge, information and belief, there are no other persons known to me who should be joined in the within action.

WOLFF & SAMSON PC
Attorneys for Defendants
Carl Simoni and
ComJet Aviation Management, LLC

By: _____
ADAM K. DERMAN

Dated: April 4, 2003

## CERTIFICATION OF SERVICE

I hereby certify that on April 4, 2003, I caused a copy of the within pleading to be served upon counsel for plaintiff, via facsimile and regular mail, within the time ordered by the Court on March 25, 2003

ADAM K. DERMAN

Dated:   April 4, 2003

# CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1

**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY | | | |
|---|---|---|---|
| PAYMENT TYPE:  CK | CG | CA | |
| CHG / CK NO. | | | |
| AMOUNT: | | | |
| OVERPAYMENT: | | | |
| BATCH NUMBER: | | | |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Adam K. Derman, Esq. | 973-530-2027 | Bergen |

| FIRM NAME (if applicable) | DOCKET NUMBER (When available) |
|---|---|
| Wolff & Samson PC | BER-L-3719-02 |

**OFFICE ADDRESS**
One Boland Drive
West Orange, New Jersey  07052

**DOCUMENT TYPE**
Answer, Counterclaim and Third-Party Complaint

**JURY DEMAND**  ☒ YES  ☐ NO

**NAME OF PARTY** (e.g. John Doe, Plaintiff)

Carl Simoni and ComJet Aviation Management, LLC, defendants/third-party plaintiffs

**CAPTION**

Aviation Investors International Group Ltd., et al. v. Carl Simoni, et al.

**CASE TYPE NUMBER** (See reverse side for listing)
508

IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES  ☒ NO

IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

**RELATED CASES PENDING?**   ☒ YES  ☐ NO

IF YES, LIST DOCKET NUMBERS
ComJet Aviation Management, LLC v. Aviation Investors Holdings Ltd., et al., Index No. 02-600529 (NY Supreme Court); AIS Ltd. v. Aviation Investors International Group, Ltd., et al., Case No. 50 T 181 00399 00 (AAA); AIS Ltd. v. Aviation Investors International Group, Ltd., et al., Index No. 109284/02 (NY Supreme); Campinas Stifung v. Simoni, et al., Index No. 02 CV 3965 (SDNY).

**DO  YOU ANTICIPATE ADDING ANY PARTIES** (arising out of same transaction or occurrence)?   ☐ YES  ☒ NO

NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN
☐ NONE   ☐ UNKNOWN   N/A

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?   ☒ YES  ☐ NO

IF YES, IS THAT RELATIONSHIP   ☐ EMPLOYER-EMPLOYEE   ☐ FRIEND / NEIGHBOR   ☐ OTHER (EXPLAIN) _____
☐ FAMILIAL   ☒ BUSINESS

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES  ☒ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

NONE

DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?   ☐ YES  ☒ NO   IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION : _____

WILL AN INTERPRETER BE NEEDED?   ☐ YES  ☒ NO   IF YES, FOR WHAT LANGUAGE: _____

ATTORNEY SIGNATURE    *Adakalen*